Points decided.

# HENRY HAHN v. THOMAS KELLY AND HENRY MORSE.

JUDGMENT VOID FOR WANT OF JURISDICTION.—A judgment is absolutely void, if it appear that there was a want of jurisdiction in the Court rendering it, either of the subject matter or the person of the defendant.

JUDGMENT COLLATERALLY ATTACKED FOR WANT OF JURISDICTION.—The judgment of a Court of superior jurisdiction may be collaterally attacked upon the ground that the Court by which it was rendered had no jurisdiction, either of the subject matter or of the person of the defendant, or both.

IDEM—MODE OF ATTACK. — Such facts or circumstances only can be shown or relied on, in support of such attack, as affirmatively appear on the face of the record, or what, under the law as it read at the date of the judgment, constituted the judgment roll.

VERITY OF RECORD OR JUDGMENT ROLL.—The judgment roll, as prescribed by the Civil Practice Act, constitutes the record of a Court of superior jurisdiction, and, because it imports absolute verity, it cannot be collaterally attacked by proof *aliunde.*

JURISDICTION OF SUPERIOR COURT — WHEN PRESUMED.—It is not essential that the jurisdiction of a superior Court should affirmatively appear in the judgment roll; if it does not, and the contrary does not therein affirmatively appear, jurisdiction will be conclusively presumed.

WHAT CONSTITUTES THE JUDGMENT ROLL WHERE JUDGMENT IS BY DEFAULT.— The judgment roll in such case, under the statute, consists of the summons, the affidavit or proof of service, the complaint, with the default indorsed thereon, and a copy of the judgment.

MODE OF ACQUIRING JURISDICTION OF THE PERSON OF DEFENDANT.— There are two modes of acquiring jurisdiction of the person ; first, by personal service of the summons and copy of complaint ; and second, by constructive service, or by what is commonly designated publication of summons.

IDEM.—The former may be made by the Sheriff of the county where the defendant may be found, his deputy or special appointee, the special appointee of the Judge of the Court in which the action is brought, or by any white male citizen of the United States over twenty-one years of age, who is competent to be a witness on the trial of the action. The latter is set on foot by an affidavit, setting forth certain facts specified in the statute, on which is predicated an order of the Court, the Judge thereof, or a County Judge, directing the publication of the summons in a newspaper named, for a designated period, and if the residence of the defendant be known, by directing that a copy of the summons and complaint be forthwith deposited in the post office and directed to him at his place of residence, and is terminated by publication and mailing as ordered, or by personal service, made out of the State, which is equivalent to such publication and mailing.

IDEM—PROOF OF SERVICE.—The proof of the former mode of service, if made by an officer, is by his affidavit or certificate, setting forth the mode, time and place of such service ; if made by a citizen, then by his affidavit, setting forth said facts, and in addition, the facts constituting his said qualifications. Proof of the latter mode of service is by the affidavit of the printer, his foreman, or principal

clerk, setting forth the fact, where and how long the publication of summons has been made, and where a deposit in the post office has been ordered, then an affidavit showing such deposit.

JURISDICTION OF THE PERSON OF THE DEFENDANT. — Where the judgment of a superior Court, rendered by default, is attacked collaterally, the summons, the affidavits of the printer, and of said deposit in post office when ordered, the complaint, with the default indorsed thereon, and the judgment, can alone be inspected to determine whether the record shows a want of jurisdiction of the person of defendant. The said affidavit and order for publication constitute no part of the record or judgment roll, and will be presumed to have been all that the law required when they were made.

THE RULE BY WHICH INSPECTION OF THE RECORD IS GOVERNED.—The rule by which inspection of the record is governed is, that legal presumptions do not come to the aid of the record, except as to acts or facts touching which the record is silent. In such case, it will be presumed that what ought to have been done was not only done, but rightly done ; but where the record states what was done, it will not be presumed that something different was done. A want of jurisdiction affirmatively appears on the face of the record, when whatever was done is stated, and which, having been done, was not sufficient in law to give the Court jurisdiction.

IDEM.—Another rule is, that the whole record must be permitted to speak, as where that portion which is denominated the proof of service, is not silent, but recites facts and acts done, as constituting the service made, and which, if the record were otherwise silent, would make it affirmatively show a want of jurisdiction of the person of defendant, yet if, in another part, as the judgment, further facts or acts, not irreconcilable with the former, be recited, which establish such jurisdiction, it is sufficient to uphold the judgment.

IDEM.—Where the judgment recites the fact that the defendant has been duly served with process, it is a direct adjudication by the Court upon the point, and is as conclusive on the parties as any other fact decided in the cause, provided it does not affirmatively appear from other portions of the record, consisting of the judgment roll, that the recital is untrue.

LEGAL PRESUMPTIONS AS TO JURISDICTION OF COURTS.—The rule is, that the presumptions of law are in favor of the jurisdiction and of the regularity of the proceedings of Courts of superior or general jurisdiction, which, in this State, comprise all Courts of record, and this rule obtains equally, whether their proceedings be by the course of the common law or statute law, or be in the acquisition of jurisdiction of the person of defendant, by making either active or constructive service of the summons on him ; but that no such presumptions are indulged in favor of the jurisdiction or regularity of the proceedings of Courts and tribunals of inferior or limited jurisdiction, which, in this State, comprise all Courts not of record, and all special Boards and tribunals which are created by law and clothed with judicial functions of a limited and special character ; and all persons who claim any right or benefit under their judgments must show their jurisdiction affirmatively.

RECORDS AND COURTS OF RECORD.—At common law, a record signifies a roll of parchment, upon which the proceedings and transactions of a Court are drawn up by its officers, and which is then deposited in its treasury *in perpetuam rei memoriam.*

A Court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, which rolls are called the records of the Court, and are of such high and supereminent authority that their truth is not to be called in question. *Per* SAWYER, C. J.

IDEM.—The privilege of having these enrolled memorials, constitutes the great leading distinction, in English and American law, between Courts of record and Courts not of record, or superior and inferior Courts. *Per* SAWYER, C. J.

IDEM.—In the United States, paper has universally supplied the place of parchment, as the material of the record, and the *roll* form has fallen into disuse, but whether on parchment or paper, in the roll form or otherwise, this judgment roll is what is known in law as the record, and is what is meant by Courts and law writers when they speak of records of superior Courts, or Courts of record. *Per* SAWYER, C. J.

IDEM.—This technical record is the only strict and proper proof of the proceedings of the Courts in which they are preserved, and is regarded in law as proof of so absolute a nature as to admit of no contradiction—not even by the files and minutes of the Court in which the record is preserved. But in those Courts and tribunals where the proceedings are not enrolled or recorded, as well the existence of their proceedings, as the truth of the matters therein contained, shall, if disputed, be tried and determined by a jury. *Per* SAWYER, C. J.

IDEM.—Technical records formerly consisted of the placita, memorandum, pleadings, imparlance or continuance, etc., and closing with the judgment, but more recently they have been somewhat modified by statutory provisions in many of the States, but when made up they still contain the substance of the former rolls. Section two hundred three of the Practice Act provides for a judgment roll, and prescribes what it shall contain, and it is made to embrace all the essentials of the common law record. *Per* SAWYER, C. J.

IDEM.—These rules may be inapplicable in those States, as in Iowa, where, in Courts of record, no judgment rolls or technical records are made up. *Per* SAWYER, C. J.

APPEAL from the District Court, Third Judicial District, Alameda County.

This was an action to quiet title to a tract of land situate in Alameda County, and to restrain a sale thereof. The facts are as follows, to wit: On the twentieth day of January, 1857, Horace Hawes commenced an action in the District Court of the Twelfth Judicial District, for the County of San Mateo, against Wm. Carey Jones and Charles Brown, to obtain the foreclosure of a certain mortgage, before that time made by Jones in favor of Hawes, and then alleged to be due and unpaid. Such proceedings were had in the action that afterwards, on the 17th day of August of the

same year, a decree was entered in the action, directing the sale of the mortgaged premises, the application of the proceeds towards the payment of the mortgage debt, and if insufficient for that purpose, that the plaintiff have execution for the deficiency. Pursuant to this decree, the mortgaged premises in San Mateo County were duly sold, and there being a large deficit, a transcript of the judgment was filed in Alameda County, on the 17th of November, 1857, and an execution was issued to the Sheriff of the latter county, who levied upon the interest of Jones in the lands in controversy in this action, which, as admitted by the plaintiff and defendant, was one undivided one quarter in fee simple. In due course the Sheriff of Alameda County made sale of this interest to one H. P. Jones, who, on the 28th of September, 1858, after the time of redemption had expired, received a Sheriff's deed, which was immediately recorded, and shortly thereafter, H. P. Jones, for a valuable consideration, sold the lands so purchased by him to the plaintiff in this action, who entered into possession of them, and so continued in possession to the commencement of this action.

Subsequently, in March, 1866, the respondent Kelly brought an action in the Fifteenth District Court for the City and County of San Francisco, against Wm. Carey Jones, in which, on the twenty-fourth of that month, he obtained judgment, and in the following May issued execution thereon to the respondent Morse, Sheriff of the County of Alameda, who levied upon the lands in controversy in this action, and advertised the same to be sold, and was about to sell the undivided one quarter of the same as the property of Wm. Carey Jones when this action was commenced by appellant to quiet his title and to restrain the sale. The respondent Kelly answered, and when the cause came to trial, the appellant, after it had been admitted by respondent that Wm. Carey Jones was, on the seventeenth day of November, 1857, seized in fee of said one undivided one quarter part of said land, introduced in evidence the aforesaid decree in the case of *Hawes* v. *Jones and Brown,* the order of sale, sale and

deed by the Sheriff to H. P. Jones, and the conveyance to appellant by the latter, and rested. The respondents then introduced in evidence, under the objections and exceptions of appellant, the remainder of what was claimed by them to be the judgment roll in that action, which, as claimed by respondents, showed that an unsuccessful attempt was made to serve Wm. Carey Jones, by publication of the summons, but that, in consequence of certain alleged defects, was a nullity, and that the decree was therefore absolutely void.

The papers thus introduced in evidence by respondents, which were additional to appellant's said evidence, consisted of the affidavit of the plaintiff, in that action, to procure an order for the service of the summons therein on the said William Carey Jones, by the publication of the same; the order of the Judge of said Twelfth Judicial District, by which it was ordered that said summons be published in the Morning *Globe* newspaper for three months; the affidavit of R. K. Dodge that said publication was made as ordered; the affidavit of Felix McClosky that he had served said summons personally on said Jones in Washington City, D. C., on the 12th day of March, 1857. The said affidavit of the plaintiff, and said order for the publication of the summons, when offered in evidence, were objected to by appellant as irrelevant and incompetent, because they constituted no part of the judgment roll in said action of *Hawes* v. *Jones and Brown*, and to their admission duly excepted.

The said decree in the said last named case, among other things, contained the following, to wit:

" And now at this day, to wit: the seventeenth day of August, A. D. 1857, it appearing to the Court that the summons and complaint in this cause have been duly served on the defendants according to law, and the order of the Judge of this Court, that the time for answering prescribed by law has expired, that no answer has been put in, and the default of the defendants having been duly entered, on application of the plaintiff for judgment," etc.

The trial of this cause below was by the Court without a jury. The defendant had judgment, and plaintiff appealed therefrom and from an order denying his motion for a new trial.

*Crane & Boyd*, for Appellant.

The judgment in favor of Horace Hawes and against William Carey Jones and Charles Brown, entered in the District Court of the Twelfth Judicial District for the County of San Mateo, on the 17th day of August, 1857, finds as a fact, and recites upon its face, " that the summons and complaint in this cause have been duly served on the defendants according to law, and the order of the Judge of this Court." This judgment cannot be attacked collaterally, but the jurisdiction of the Court over the person of Jones will be presumed, unless there is evidence to the contrary on the face of the record, (*Crosswell* v. *Byrnes*, 9 John. 286; *Green* v. *Ovington*, 16 John. 55; *Field* v. *Gibbs*, 1 Pet. C. C. 155; *Hoxie* v. *Wright*, 2 Vt. 263; *Nagle* v. *Macy*, 9 Cal. 426; *Irwin, Administrator* v. *Scribner*, 18 Cal. 449: *Dorente* v. *Sullivan*, 7 Cal. 279; *Cook* v. *Darling*, 18 Pick. 393; *Bloom* v. *Burdick*, 1 Hill, 130; *Whitwell* v. *Barbier*, 7 Cal.,) even upon default, and the judgment fails to show service of process. (*Foot* v. *Stevens*, 17 Wend. 483; *Hart* v. *Seixas*, 21 Wend. 40; *Cole* v. *Hall*, 2 Hill, 625.)

The plaintiff and appellant introduced the judgment alone. This showed jurisdiction on its face. The defendants and respondents were then permitted to introduce in evidence certain documents, claimed by them to be a judgment roll, for the purpose of attacking the judgment. This was error. The judgment roll, where there is a default, consists only of the summons, complaint, proof of service, memorandum of default on complaint, and copy of judgment. The affidavit and order of publication form no part of the judgment roll. The order is, that the service be made by publication. Neither the affidavit or order constitute

any part of the service; they are merely the preliminary steps. (Prac. Act, Secs. 30, 31; *Vernam* v. *Holbrook*, 5 How. Pr. 3.) If any other papers appear in what is called a judgment roll, they are superfluous, and must be disregarded. (*Schenectady and Saratoga Plank Road Co.* v. *Thatcher*, 6 How. Pr. 226; *Cook* v. *Dickerson*, 1 Duer, 679.)

If, however, it is considered that the affidavit and order for the publication of the summons properly constitute a part of the judgment roll in the case of *Hawes* v. *Jones and Brown*, yet, as the judgment in that case recites the fact of due service of the summons upon Jones, the Court, when that judgment is attacked collaterally, will, for the purpose of sustaining it, presume that other evidence besides that found in the judgment roll, and sufficient in its character, was furnished as to the fact of the service of process. (*Clary* v. *Hoogland*, 6 Cal. 685; *Alderson* v. *Bell*, 9 Cal. 315; *Logan* v. *Hillegass*, 16 Cal. 200; *Lick* v. *Stockdale*, 18 Cal. 219; *Bromley* v. *Smith*, 2 Hill, 517; *State of Iowa* v. *Elgin*, 11 Iowa, 216.)

*Horace Hawes, Wilson & Crittenden, William Hale, James McM. Shafter,* and *Edward F. Head,* also for Appellant.

It is submitted, first, that an act occurring in judicial proceedings, though prescribed by statute, may be irregular, and yet not a nullity; second, that such an act may be a nullity, and yet the nullity of the act may not affect the validity of the judgment.

If the cause be pending in a Court of general jurisdiction, and the Court either expressly or by implication has adjudged the act valid or sufficient, and has proceeded to render final judgment, the validity of the act is no longer open to question, except by appeal, and the judgment, though erroneous, is not a nullity, and cannot be attacked collaterally. The reason is, that such Court, unlike Courts of special and limited jurisdiction, inherently has power, and from necessity is compelled to decide upon its own jurisdic-

tion, including the regularity, validity, force, and effect of every step in the cause. "The judgment concludes all irregularities in the previous proceedings."

[NOTE.—Under the appropriate heads the subjoined authorities were cited in support of the foregoing propositions, which, for the sake of brevity, and because they all bear with more or less directness upon the main question decided by this Court, are presented together.—REP.]

Cal. Prac. Act, Secs. 113, 22, 23, 203, 201, 28–31, 33.

N. Y. Code Pr., Secs. 220, 356.

*Woodruff* v. *Fisher,* 17 Barb. 225.

*Morgan* v. *Quackenbush,* 22 Barb. 76.

*McGilvery* v. *Morehead,* 2 Cal. 607.

1 Tidd's Prac. 179–90, 108, 109, 142.

*Fowler* v. *Moreton,* 2 Bos. & Pul. 48.

*McKenzie* v. *McKenzie,* 1 Term R. 716.

*Williams* v. *Jackson,* 3 Term R. 575.

*Jennings* v. *Martin,* 3 Burr. 1,447.

*Barclay* v. *Hunt,* 4 Burr. 1,992.

*Vernam* v. *Holbrook,* 5 How. Pr. 3.

1 Whit. Prac. P. 105, 135, 137.

*Ricketson* v. *Richardson,* 26 Cal. 149.

*Phila. and Trenton Railroad Co.* v. *Stimpson,* 14 Pet. 457.

*Roche* v. *Ward,* 7 How. 417.

*Heyman* v. *Landers,* 12 Cal. 107.

*People* v. *Huber,* 20 Cal. 81.

*Blackmar* v. *Van Inwager,* 5 How. Pr. 367.

*Pragg* v. *Adams,* 2 Salk. 674.

*Steinbach* v. *Leese,* 27 Cal. 295.

*Ex Parte Bank of Monroe,* 7 Hill, 178.

*Cunningham* v. *Goellett,* 4 Denio, 71.

*Staples* v. *Fairchild,* 3 Comst. 45.

*Payne* v. *Young,* 8 N. Y. 158.

*McMinn* v. *Whelan,* 27 Cal. 312.

*Boswell* v. *Sharp,* 15 Ohio, 467.

*McMillen and Wife* v. *Reynolds,* 11 Cal. 372.

*Alderson* v. *Bell,* 9 Cal. 315.

*Dorente* v. *Sullivan*, 7 Cal. 279.

*Myers* v. *Overton*, 4 E. D. Smith, 429.

*Montgomery* v. *Tutt*, 11 Cal. 190.

*Pico* v. *Suñol*, 6 Cal. 294.

*Ritter* v. *Scannell*, 11 Cal. 238.

*Barnes* v. *Harris*, 4 Comst. 375, 386.

*Skinner* v. *Beatty*, 16 Cal. 156.

*McElrath* v. *Butler*, 7 Iredell, 398.

*Telford* v. *Marsh*, 1 Iowa, 586.

*Rino* v. *Pindar*, 20 N. Y. 298.

*Brown* v. *Cady*, 19 Wend. 479.

2 Am. L. Cases, 81.

*Whitewell* v. *Barbier*, 7 Cal. 63.

*Polock* v. *Hunt*, 2 Cal. 193.

*Guy* v. *Ide*, 6 Cal. 99.

*Nagle* v. *Macy*, 9 Cal. 429.

*Jordan* v. *Giblin*, 12 Cal. 100, 102.

*Bromley* v. *Smith*, 2 Hill, 577.

*Voorhees* v. *Bank U. S.*, 10 Peters, 449.

*Gray* v. *Hawes*, 8 Cal. 562.

*The State* v. *Woodliff*, 2 Cal. 241.

*Joyce* v. *Joyce*, 5 Cal. 449.

*Swain* v. *Chace*, 12 Cal. 283.

*Braly* v. *Seaman*, 30 Cal. 610.

*Forbes* v. *Hyde*, 31 Cal. 342.

*United States* v. *Aredondo*, 6 Pet.

*Miller* v. *Brinkerhoff*, 4 Denio, 120.

*Croswell* v. *Byrnes*, 9 Johns. 286.

*Cook* v. *Darling*, 18 Pick. 393.

*Grignon* v. *Astor*, 2 How. 319.

*Lick* v. *Stockdale*, 18 Cal. 219.

*Montgomery* v. *Tutt*, 11 Cal. 317.

*Jenks* v. *Stebbins*, 11 Johns. 227.

*Jackson* v. *Leek*, 12 Wend. 104.

*Paine* v. *Moreland*, 15 Ohio, 435.

*Cole* v. *Hall*, 2 Hill, 626.

*Grewell* v. *Henderson*, 7 Cal. 290.

*Young* v. *Loraine*, 11 Ill. 626.

*McPherson* v. *Cunliff*, 11 S. & R. 422.

*Selin* v. *Snyder*, 7 S. & R. 166.

*Rust* v. *Frothingham*, 1 Breese, 258.

*Coit* v. *Haven*, 30 Conn. 190.

*Carpentier* v. *City of Oakland*, 30 Cal. 439.

*Field* v. *Gibbs*, 1 Pet. C. C. 155.

*Richards* v. *Skiff*, 8 Ohio St. R. 586.

*Tarbox* v. *Hayes*, 6 Watts, 398.

*Clark* v. *McComan*, 7 W. & S. 469.

*Granger* v. *Clark*, 22 Maine, 129.

*Hoffman* v. *Coster*, 2 Whart. 469.

*Morris* v. *Galbraith*, 6 Watts, 166.

*Hazlett* v. *Ford*, 10 Watts, 101.

*Welch* v. *Sykes*, 3 Gilman, 197.

*Vandyke* v. *Bastedo*, 3 Greene, 229.

*Thompson* v. *Tolmie*, 2 Pet. 165.

3 Bl. Com., B. III, Cap. XVIII, p. 280.

*Hart* v. *Seixas*, 21 Wend. 40.

*Foot* v. *Stevens*, 17 Wend. 483.

*Rex* v. *Venables*, 1 Strange, 630.

*Rex* v. *Clegg*, 1 Strange, 475.

*Rex* v. *Clayton*, 3 East, 61.

*Brown* v. *Wood*, 17 Mass. 68.

*Crane* v. *Brannan*, 3 Cal. 192.

*Leese* v. *Clark*, 28 Cal. 26.

*Weyer* v. *Zane*, 3 Ohio, 305.

*Boswell* v. *Sharp*, 15 Ohio, 464.

*Bangs* v. *Duckenfield*, 18 N. Y. 592.

*Potter* v. *Merchants' Bank*, 28 N. Y. 652.

*Burgess* v. *Tweedy*, 16 Conn. 43.

*Sanford* v. *Sanford*, 28 Conn. 6.

*Gregory* v. *Ford*, 14 Cal. 141.

*Fowler* v. *Lee*, 10 Gill. & J. 363.

*Crafts* v. *Dexter*, 8 Ala. 770.

*Betts* v. *Bagley*, 12 Pick. 572.

*Porter* v. *Purdy*, 29 N. Y. 110.

*Egery* v. *Buchanan*, 5 Cal. 53.

*Telford* v. *Marsh*, 1 Iowa, 586.

*Chesnut* v. *Barney*, 12 Ill. 178.

*Kipp* v. *Fullerton*, 4 Iowa, 480.

*Taliman* v. *Ely*, 6 Wis. 259.

*Cox* v. *Thomas*, 9 Gratt. 326.

*Gay* v. *Smith*, 38 N. H. 174.

*Clary* v. *Hoagland*, 6 Cal. 688.

*Hammond* v. *Draper*, 25 Vt. 349.

*Allen* v. *Huntington*, 2 Aiken, 250.

*Heirs of Biggs* v. *Blue*, 5 McLane, 148.

*Smith* v. *Rice*, 11 Mass. 514.

*Gibbons* v. *Scott*, 15 Cal. 284.

*Gossat* v. *Howard*, 10 Q. B. 453.

Broom's Legal Maxims, 851–56.

*McCarthy* v. *Marsh*, 1 Selden, 279.

*Sheldon* v. *Wright*, 1 Selden, 514.

*Dyckman* v. *The Mayor, etc.*, 1 Selden, 440.

*Spratt* v. *Spratt*, 4 Pet. 393.

*Borden* v. *Fitch*, 15 Johns. 141.

*Mills* v. *Martin*, 19 Johns. 33.

*Latham* v. *Egerton*, 9 Cow. 229.

*Abadie* v. *Carillo*, 32 Cal. 172.

*Patterson, Wallace & Stow*, for Respondents.

In the action of *Hawes* v. *Jones et al.*, Jones did not appear; nor was he personally served with process *within the territorial jurisdiction* of the Court which rendered the pretended judgment of August 17th, 1857.

The Court confessedly having failed to obtain jurisdiction of the person of Wm. Carey Jones in either of these two modes, there was but one other means by which it could do so—that was, by constructive service of its process upon him extra-territorially made.

In determining the question of jurisdiction upon such

51

constructive service, no distinction is made between Courts of general jurisdiction on the one hand, and Courts of inferior or limited jurisdiction on the other. No presumption whatever is indulged in favor of the jurisdiction of *any* Court, however superior its grade, where the alleged service was other than personal, and within the territorial jurisdiction of the Court. (*Gray* v. *Larrimore*, U. S. Circuit Court for Cal. ; *People* v. *Huber*, 20 Cal. 81.)

By the Court, SANDERSON, J. :

Where the judgment of a Court of superior jurisdiction is offered in evidence, during the progress of a trial, it may be attacked by the opposite side upon the ground that the Court by which it was rendered had no jurisdiction, either of the subject matter or of the person of the defendant, or both ; for any judgment of any Court is absolutely void, if it appear that there was a want of jurisdiction in either respect. In support of this attack, however, no facts or circumstances can be shown, or relied upon, which do not appear upon the face of what, under the law as it read at the date of the judgment, consituted the record, or, to adopt the nomenclature of our code of procedure, the judgment roll ; for the record of a Court of superior jurisdiction imports absolute verity, and cannot, therefore, be collaterally impeached from without. In this respect the rule may be stated too broadly in *McMinn* v. *Whelan*, 27 Cal. 314; but it is correctly stated in the subsequent case of *Carpentier* v. *The City of Oakland*, 30 Cal. 446. Our language in the former case implies that a want of jurisdiction may be shown *aliunde ;* but no such question was involved in that case, and what was said upon that subject must be considered *dictum.* Furthermore, it is a matter of no consequence whether the jurisdiction of the Court appears affirmatively upon the judgment roll or not, for if it does not it will be conclusively presumed. These are elementary principles. (*Carpentier* v. *City of Oakland*, 30 Cal, 447 ; *Forbes* v. *Hyde*, 31 Cal. 342 ; *Coit* v.

*Haven,* 30 Conn. 198.) So the only question which we are
called upon to answer is—Does the judgment roll, in the
case of *Horace Hawes* v. *William Carey Jones,* show upon its
face that the Court from which it comes did not have juris-
diction of the person of the defendant Jones ?

Preliminary to this, however, there is still another ques-
tion about which there is some controversy between counsel,
as to what is the judgment roll in that case. The judgment
was by default. In such a case the judgment roll consists of
the summons, the affidavit or proof of service, the complaint
with the default indorsed thereon, and a copy of the judg-
ment. (Prac. Act, Sec. 203.) What is meant by proof of
service ?

There are two modes of obtaining jurisdiction over the
person of a defendant; First, by personal service of the
summons, with a copy of the complaint; second, by con-
structive service, or what is commonly designated publica-
tion of summons. The former may be made by the Sheriff
of the county where the defendant is found, or by his
deputy, or by a person specially appointed by him, or
appointed by a Judge of the Court in which the action is
brought, or by any white male citizen of the United States
over twenty-one years of age, who is competent to be a wit-
ness on the trial of the action. The latter is set on foot by
an affidavit showing the existence of certain facts in view of
which that mode of service is allowed, followed by an order
of the Court, or a Judge thereof, or a County Judge, direct-
ing publication of the summons to be made in some news-
paper (most likely to give the defendant notice) for a certain
length of time, which varies according to circumstances,
and if the residence of the defendant be known, also direct-
ing a copy of the summons and complaint to be forthwith
deposited in the Post Office, addressed to him at his place of
residence, and is terminated by publication and mailing, if
the defendant's place of residence is known, or by personal
service out of the State, which is equivalent to publication
and mailing. Proof of the former mode of service is the

affidavit or certificate of the officer, if the service has been made by an officer, of the fact and the time and place of service, or the affidavit of a citizen, if service has been made by a citizen, showing that he is competent to make the service, and that he in fact made it by delivering to the defendant personally a certified copy of the summons and complaint, stating the time and place. Proof of the latter mode is the affidavit of the printer, or his foreman or principal clerk, showing that publication has been made, stating where and how long, and an affidavit showing a deposit in the Post Office if such deposit was made. (Sections 28–31, 33, 34.)

In our judgment, it would have added to the completeness of the record to have made the proof of service by publication include also the affidavit of the party, and the order of the Court directing publication to be made, for in point of law they constitute a part of the mode; but the Legislature has not seen proper to do so, and we can no more add to their will than we can take from it.

So, for the purpose of determining whether a want of jurisdiction is shown by the record, we can look only to the summons, the affidavit of the printer, the complaint, with the default indorsed thereon, and the judgment. The affidavit of Hawes, made for the purpose of obtaining an order for publication, and the order of the Court directing publication, for all the purposes of the question before us, must be disregarded, or in other words presumed to have been all that the law requires.

We are aware that the cases of *Braly* v. *Seaman*, 30 Cal. 610, and *Forbes* v. *Hyde*, 31 Cal. 342, were considered by us upon the theory that the affidavit of the plaintiff or of some one else in his behalf, and the order of the Court, constituted a part of the record or judgment roll, and could therefore be consulted on a question of jurisdiction if made. In so assuming—for the point was neither made nor considered— we were in error. In both cases counsel assumed, and therefore conceded, that they were a part of the judgment

roll.   Where counsel, eminent for their learning and ability, thus agree as to a matter·of statute regulation, it cannot be expected that this Court will look critically into the matter, and in view of its manifold labors it may well be pardoned if it does not.   It is the duty of counsel to make points and of the Court to decide them.   Whether the point now determined would have affected the result in either of those cases, it is now too late and therefore idle to inquire.   It is sufficient to say that neither of them is authority upon the question, for in neither was the point made or considered.

Before inspecting the judgment roll in *Hawes* v. *Jones* it is proper to consider the rule by which such inspection is to be governed.

In this connection it is claimed on the part of the appellant, in effect, that we must presume a legal service notwithstanding the proof fails to show it or tends to show the contrary, or in other words, that if the affidavit of Dodge, chief clerk of the Morning or Daily *Globe*, or of McClosky, who made personal service at the City of Washington, fails to state all the facts which the statute has made essential to this mode of service, we must presume that some other affidavit was actually made, in view of which the Court took jurisdiction, which was sufficient, and which for some reason not known was not made a part of the judgment roll by the clerk.   Within certain limits this is doubtless true, but thus broadly stated does it not go too far and invoke presumption where none may exist?   Is it according absolute verity to the record under all circumstances, or is it impeaching the record under possible circumstances, upon the ground that it misrepresents what actually took place?   Undoubtedly if the record is silent as to what was done in respect to some material matter, we will presume that what ought to have been done was done.   If there is no proof of what was done in obtaining service, in the record, we will presume that legal service was in fact made; but when the record shows what was done for the purpose of obtaining service, how can we presume that something different was in fact done?

Would not that be to join issue with the record and dispute what it says—which we have agreed cannot be done? When the record speaks at all it must be understood to speak the truth as to the particular fact of which it speaks, for by the law of its creation it can tell no lies, neither direct nor circumstantial. This is so not only when the record speaks in favor of the jurisdiction, but when it speaks against it.

Pushed to its logical results, this doctrine, without some qualification, becomes equivalent to a rule that the judgment of a Court of superior jurisdiction cannot be attacked at all in a collateral action, notwithstanding a want of jurisdiction may appear upon the face of the record, which differs materially from the rule as stated by us at the threshold. At least it is equivalent to saying that no judgment can be attacked collaterally, unless the record shows affirmatively upon its face that this or that was not done, or that no service of summons was had upon the defendant—language which, we venture to say, has never yet been found in any record. What do the cases mean when they speak of a want of jurisdiction appearing upon the face of the record? Do they mean a positive and direct statement to the effect that something which must have been done, in order to give the Court jurisdiction, was not done? Or do they mean that a want of jurisdiction appears whenever what was done is stated, and which, having been done, was not sufficient in law to give the Court jurisdiction? If the former, they are a delusion, and the respondents and others, in like circumstances, may well characterize them as cases—

> " That palter with us in a double sense ;
> That keep the word of promise to our ear,
> And break it to our hope."

For we venture to say that no case can be found, or will arise hereafter, where the conditions contemplated by such a rule will be found to exist. No Court has ever yet so far stultified itself as to render a judgment against a defendant and at the same time deliberately state that it had not acquired jurisdiction over his person.

Suppose in a case of attempted personal service the officer should return that he had served the summons upon A. B., the son of the defendant, by delivering to him personally a copy and also a copy of the complaint, and the remainder of the record is silent upon the question of service. Could we presume in the face of such a record that he served it on the defendant also ? Undoubtedly not. There would be a want of jurisdiction upon the face of the record within the rule in hand, and the judgment would be declared a nullity whenever and wherever presented in support of a legal claim or right.

We consider the true rule to be that legal presumptions do not come to the aid of the record except as to acts or facts touching which the record is silent. Where the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done; but when the record states what was done, it will not be presumed that something different was done. If the record merely shows that the summons was served on the son of the defendant, it will not be presumed that it was served on the defendant. If the affidavit of the printer shows that the summons was published one month, it will not be presumed that it was published three.

To avoid any misapprehension, we deem it proper to add that, so far, we have assumed, for the purposes of the argument, that the record, aside from that portion of it which is denominated the proof of service, is silent upon the question of service. But it may happen that other portions of the record may also speak upon that question. If so, what they say is not to be disregarded. On the contrary, in determining the question whether a want of jurisdiction is apparent upon the face of the record, we must look to the whole of it and report the responses of all its parts. To illustrate : Suppose that portion of the judgment roll denominated the " affidavit or proof of service " shows that personal service was made upon the son of defendant, and the remainder of the roll says nothing about service. We then have a want

of jurisdiction appearing upon the face of the record. But suppose the judgment states that the defendant appeared, or that personal service was made upon him, or something else that is equivalent, as it frequently does, the opposite result follows, for the record cannot lie, and it appears that the father as well as the son had been served, which may well have been the case. The record in such a case does not blow hot and cold, as might be supposed; on the contrary, both acts may have been done. On presentation of the return of service upon the son, the Court may have declared it no service, and service upon the father may have been subsequently made, and the wrong return may have found its way into the judgment roll. To hold thus would be consistent with the record, while to hold otherwise would be to contradict the judgment.

So in the case of a service by publication—if the affidavit of the printer states that the summons was published one month, and yet the Court in its judgment states that it was published three, or that service has been had upon the defendant, it will be presumed that other proof than that contained in the judgment roll was made, for not to so presume would be to deny to the record that absolute verity which must be accorded to it. Thus limited or understood, the point made by counsel for appellant is doubtless well made.

Still less tenable, however, is the point made by the respondents, to the effect that where it appears that service was obtained by publication, nothing will be presumed in favor of the jurisdiction of the Court, but the party relying upon the judgment must show affirmatively that the Court had jurisdiction, or in other words, that he must show an affidavit and order for publication and an affidavit of publication, in all respects responsive to the calls of the statute. In holding that the affidavit and order for publication constitute no part of the judgment roll, we have already practically denied this doctrine so far as they are concerned. But there are broader grounds or more fundamental reasons

against it, which would be equally conclusive of the whole question were the affidavit and order for publication a part of the judgment roll.

To present this matter clearly, it is necessary to refer again to the rule stated at the threshold of this discussion, and especially the grounds upon which it is put. It is, that the presumptions of law are in favor of the jurisdiction and of the regularity of the proceedings of superior Courts, or Courts of general jurisdiction, (as is sometimes added,) " proceeding according to the course of the common law," but that they are not in favor of the jurisdiction and regularity of the proceedings of inferior Courts, or Courts of limited jurisdiction, and parties who claim any right or benefit under their judgments must show their jurisdiction affirmatively. So the only limitation put upon the rule is founded upon a distinction between Courts. The rule itself is founded upon the idea that the peace and good order of society require that a matter once litigated and determined shall be regarded as determined for all time, or that rights of person and property, once determined, ought not to be again put in jeopardy. A cognate principle underlies the criminal law and finds expression in the constitutional provision that no man's life or liberty shall be twice put in jeopardy for the same offense. In aid of this salutary principle the law indulges in certain presumptions; but, for other reasons equally salutary, it limits this indulgence to a certain class of Courts, which are denominated superior, or which, for the purposes of a more accurate definition, may be and sometimes are denominated Courts of record, or of general jurisdiction. This limitation is founded upon the trust and confidence which the law puts in that class of Courts which it does not place in other Courts which are inferior or not of record, or not of general, but limited or special jurisdiction. This discrimination is in turn founded upon considerations of the wisest policy, which are obvious to all. Courts of record are presided over by men of expe-

rience and learned in the law, assisted by counsel also of experience and learning, who, in the discharge of their duties to their clients, necessarily act as the advisers of the Court. Their proceedings are conducted with solemnity and deliberation, and in strict conformity with established modes, with which long experience has made Court and bar familiar, and above all, they are taken down and made a matter of record at or about the time they transpire. Of inferior Courts, as a general rule, none of these things can be affirmed.

Such is the rule, the limitation, and the reasons upon which both are founded. Is there anything, in the philosophy of the law thus stated, which requires a further limitation of the character advocated by the respondents, founded merely upon a difference in the modes by which superior Courts may be authorized to acquire jurisdiction over the person of a defendant? Is there any reason which justifies the indulgence of legal presumptions, where the mode pursued is actual service, which does not apply with equal force where the mode adopted is constructive service? Is the Court, for any reason, less competent to determine a question of constructive service than of actual service? Is the mode of determining the former less solemn and deliberate than the mode of determining the latter? Is the determination of the former less a matter of record than the determination of the latter? Is the Court less worthy of trust and confidence in the one case than in the other? If not, there can be no reason for a distinction which is founded on a mere difference in the mode of acquiring jurisdiction or transacting business. It is no answer to say that the defendant is subjected to a great hardship, if he may not impeach and contradict the record, in a case of constructive service, by showing that the mode of service has not been strictly observed. The hardship in that case is no greater than where the statute has been strictly followed. The hardship, if any, lies in the fact that he has had no actual notice, and the argument goes to the wisdom of allowing constructive

service at all; and therefore, if it proves anything, proves too much.

If there is anything in the rule itself, as stated in the books, which gives color to such a distinction, it must be found in the phrase which is sometimes added as a further description of the class of Courts to which the indulgence is extended. Not universally, but frequently we find the words " superior Courts," accompanied by the phrase " proceeding according to the course of the common law." What does this phrase mean ? Does it operate as a limitation upon the rule ? Does it mean that where a superior Court is proceeding according to the rules and practice of the common law, its jurisdiction will be presumed; but that when it is proceeding according to rules and practice prescribed by a statute, its jurisdiction will not be presumed, but must be shown ? Does it mean that the same Court is superior or inferior according to circumstances—that it is superior when it works according to common law, and inferior when it works according to statute law; if it does, what is the reason upon which the distinction which it makes is founded ? Unless those who have used the expression can give us a reason for the distinction which it seems to make, which reason is satisfactory, we must conclude that there is none, and that they have used the expression without license. We have been unable to find any reason for such a distinction, none has been suggested, and every reason which occurs to us points the other way. Some words are used to express ideas, and others to ornament them. The more we turn this expression over and examine it by the light of reason, for the purpose of determining to what use it has been put, the more we are inclined to the opinion that it has been used merely from force of habit, or mainly for ornamental purposes. It has a certain rotundity of sound which is quite pleasing to the ear, but leaves no definite impression upon the understanding. It is simply equivalent to a knowing look or a solemn shake of the head, and doubtless it was first used in that sense. When first employed its use was

harmless, for there was then no mode of procedure except such as the common law prescribed; but its continued use, where the modes of the common law have been superseded, is mischievous. Upon an examination of the books, it will be found that our most accurate writers do not use the expression when speaking of the present or cognate rules. The only distinction which they make is represented by the words " superior " and " inferior," " limited " and " general," and such, in our judgment, is the only distinction which exists; and there is no satisfactory reason for a further distinction founded upon a supposed departure from the modes in vogue at common law, for the purpose of obtaining jurisdiction. There is no force in the suggestion that a Court is exercising a general power when obtaining jurisdiction by actual service, and a limited or special power when doing so by constructive service. The distinction is not as to the power, for the power is the same in both cases, but merely as to the mode of exercising it.

The doctrine contended for, pushed to its ultimate conclusion, would abrogate the rule in this State, and dwarf all our Courts to the grade of inferior Courts at common law. The jurisdiction of all our Courts is special and limited, as defined by the Constitution, and they do not proceed according to the course of the common law, but according to the course of the Practice Act, which prescribes in almost every particular a course very different from the common law. If some of its paths are not the same, but like those of the common law, they are the exception and not the rule. Are all our Courts, therefore, inferior in the sense of the rule in question? If this is putting it too broadly, do our Courts, when they undertake to foreclose a mechanic's lien under the statute which regulates that matter, and which, in its purpose and method, is an entire stranger to the common law, become inferior Courts? When engaged in making partition of lands, as provided in the Practice Act, do they become inferior Courts so far as the proceedings relate to persons not personally served? Is this also true in respect

to proceedings under the Insolvent Law? Sometimes in the same action they proceed according to the rules of the common law, or rules which are like those of the common law, and also according to the rules of the statute. Are they therefore superior Courts as to one question and inferior as to another, in the same action? The Federal Courts are peculiarly special and limited in respect to their jurisdiction. Are they therefore all inferior within the meaning of this rule? Can nothing be presumed in favor of their jurisdiction? There can be no two opinions as to how all these questions are to be answered. (*Ex parte Tobias Watkins,* 3 Peters, 183; *Coit* v. *Haven,* 30 Conn. 195.)

In the controversy between the two Houses of Parliament, as to the terms by which the flight of James II should be described—the Commons insisting upon the expression that " he had abdicated the throne," and the Lords upon the substitution of the word " deserted "—it was contended by the latter that the word " abdicate " was unknown to the common law of England. The question was important, for if the flight of the King was an abdication, the Prince and Princess of Orange could be appointed to the vacant throne. If a desertion, it must be followed by the appointment of a Regent to govern for the lineal heir. Lord Holt, then a King's Sergeant and a member of the Commons, was one of the Managers intrusted by the Commons with the duty of debating the question in open conferences with the Managers of the House of Lords. In reply to the suggestion that the word " abdicate " was unknown to the common law, he said: " Then, my Lords, your objection that it is not a word known to the common law of England surely cannot prevail, for your Lordships very well know we have very few words in our tongue that are of equal antiquity with the common law; your Lordships know the language of England is altered greatly in the succession of ages and the intermixture of nations; and if we were obliged to make use only of words current when the common law took its origin, what

we should deliver in that dialect would be very difficult to be understood."

If this was true in England in 1689, much more is it true in America two centuries later. Judicial systems and modes of administering justice, liké everything else, are liable to change. In the organization of Courts, in the distribution of powers and in the mode of exercising them, the States of the American Union have departed widely from the course which from the outset was observed in England, and is in a great measure still preserved; yet the fundamental principles by which the administration of justice is governed remain unchanged, or changed only so far as to keep pace with the progress of the human understanding. In view of these changes, words and modes of expression once definite and apt to the purpose have to some extent ceased to be so, and they must be modified or added to for the purpose of applying, in an intelligible manner, familiar and unchanging principles to new conditions. Otherwise we make words superior to sense, and follow the shadow instead of the substance, forgetting that its adaptability to new conditions is the crowning glory of the common law. The use of the words " superior " and " inferior," or " limited " and " general," and " proceeding according to the course of the common law," in the statement of the rule in question, however apt they may have once been, are less so at this time and place, and their duties, in view of our system and mode of procedure, would be better performed by the terms " Courts of record " and " Courts and tribunals not of record." If anything further is added, the phrase " proceeding according to the course of the statute which regulates proceedings in civil cases " should be employed instead of the phrase under consideration, for the statute has superseded the common law, without however abrogating the rule in hand, the conditions being changed, but not the principle. Our District Courts, County Courts and Probate Courts, the latter having been put in this respect upon the level of superior Courts at common law by express statutory provision,

(Statutes 1858, p. 95, 1863, p. 339, Sec. 46,) are superior Courts in the sense of this rule, while Courts held by Justices of the Peace, Boards of Supervisors, and other Boards exercising judicial functions of a limited and special character, are inferior.   Superior Courts at common law, in the sense of this rule, were those which sat in Westminster Hall—the King's Bench, the Common Pleas and Exchequer—the former, as originally instituted, having jurisdiction in criminal cases, the second in civil actions, and the latter in matters of revenue.   In a certain sense, their jurisdiction was limited and special, but in the sense of this rule it was general—that is to say, general within their sphere of action. So with our Courts of record.   Each is confined to its limits as fixed by the Constitution, and in that sense is limited as to its jurisdiction, but in the sense of this rule it has general jurisdiction of the particular department of the law allotted to it.

The case of *Coit* v. *Haven, supra,* is directly in point.   The service was constructive as appeared from the return of the officer—the writ having been left at the house of defendant. The language of the judgment was : " This action came to the present term of this Court."   In opposition to the record, the parties against whom it was presented, for the purpose of showing that the judgment was void, offered to prove, by the defendant in the judgment and others, that at the time when the copy of the writ was left in service by the officer as claimed, at his usual place of abode, he was not an inhabitant of the town, or any other place in the State, and that the writ never was, in any way, served upon him, and that at the time it was claimed to have been served he was residing out of the State.   This testimony was rejected.   On appeal, after stating the general rule upon the subject, the Court said : " But the counsel for the defendant urge the extreme hardship to which a party may be subjected, if he may not deny and disprove the service of the writ, when he can clearly show that in fact no service was ever made on him, and that he never had notice of the suit in any form,

and never heard of the judgment against him until it was made the ground of an action. They say with great emphasis, and the argument is certainly a forcible one, can it be that a Clerk of the Court may fabricate a record, or an officer make a false return of service, and yet there be no escape for one who is thus by a judgment in the suit made heavily indebted or found guilty of a wrong, when in fact he is perfectly innocent or never owed the debt, and could show it clearly if he had a chance? Will a Court, they ask, because it has a general jurisdiction, protect and give effect to such a fraud? It will not be claimed, and has not been on the argument, but that when a Court has jurisdiction its record speaks absolute verity, because it is the record of the Court's doings; and being a Court of final jurisdiction, there must be an end to the matter in dispute, if it be possible to reach that end at all. And it is so necessary that confidence should be reposed in Courts of a high character, as well as in the records of such Courts, that on the whole, and in view of all the considerations affecting the subject, it is the only safe rule to give the decisions of Courts of general jurisdiction full effect so long as they remain in force, rather than to leave them open to be attacked in every way and on all occasions. Being domestic judgments, they can, if erroneous, be reviewed by proceedings instituted directly for the purpose, and reversed on error, or by a new trial; and if the danger is imminent and special, relief can be temporarily, if not finally obtained by application to a Court of equity. * * * Any other rule with regard to judgments of such Courts would be attended with very great embarrassments, and would be very dangerous in its general operation. The general good clearly requires, and has therefore established the rule, that domestic judgments of Courts of general jurisdiction cannot be attacked collaterally.

" The reason why this rule is not extended to the judgments of all Courts is, as we have before suggested, that the law conclusively presumes the jurisdictional facts in the case of a judgment of a Court of general jurisdiction, so long as

the record shows nothing to the contrary, but does not make any such presumption in favor of the judgments of Courts of limited jurisdiction. The jurisdiction of. such Courts not being presumed, must depend upon actual facts, which of course are open to dispute and not concluded by the record, for if the jurisdictional facts did not exist the Court really had no jurisdiction, and its record is not, in the eyes of the law, an absolute verity, but a mere unauthorized narrative." (30 Conn. 199.)

In discussing this point so far, we have assumed, as counsel for the respondents seem to have done, that constructive service is unknown to the common law. The precise mode provided by our statute may be, but it will certainly not be claimed that there can be any distinction founded upon a mere difference in the mode by which constructive service is obtained. The only rational or plausible ground for any distinction lies between actual and constructive notice and no notice. If there is any hardship in the rule, as defined by us, or any necessity for the distinction asserted by respondents, it grows out of a want of notice, for beyond or within a want of notice neither the charge of hardship nor the call of necessity can find a point upon which to rest. The idea, then, that a Court which undertakes to obtain jurisdiction of the person of a defendant by constructive service of its process is proceeding contrary to the principles upon which the course of the common law is based, is founded in a mistake, for constructive service is not, ·as the argument of counsel for respondents presupposes, a stranger to the course of the common law. In cases similar to those in which we resort to service by publication, there has always been some mode by which jurisdiction has been obtained at common law, amounting or equivalent to constructive service. In the Courts of common law, " if the Sheriff cannot find the defendant upon the first writ of *capias,* and return a *non est inventus,* there issues out an *alias* writ, and after that a *pluries.* * * * And if a *non est inventus* is returned upon

53

all of them, then a writ of *exigent* or *exiyi facias* may be sued out, which requires the Sheriff to cause the defendant to be proclaimed, required, or exacted, in five County Courts successively, to render himself, and if he does, then to take him as in a *capias ;* but if he does not appear, and is returned *quinto exactus*, he shall then be outlawed by the Coroners of the county." (Bl. Com., Book III, p. 283.)

So in chancery : " If the Sheriff returns that the defendant is *non est inventus*, then an attachment with proclamation issues which, besides the ordinary form of attachment, directs the Sheriff that he cause public proclamation to be made throughout the county to summon the defendant, upon his allegiance, personally to appear and to answer. If this be also returned with a *non est inventus* and he still stands out in contempt, a commission of rebellion is awarded against him for not obeying the King's proclamation according to his allegiance, and four Commissioners therein named, or any of them, are ordered to attach him wheresoever he may be found in Great Britain, as a rebel and contemner of the King's laws and government, by refusing to attend his sovereign when thereunto required. * * * If upon the commission of rebellion a *non est inventus* is returned, the Court then sends a Sergeant at Arms in quest of him, and if he eludes the search of the Sergeant also, then a sequestration issues to seize all his personal estate, and the profits of his real, and to detain them subject to the order of the Court. * * * After an order for a sequestration issues, the plaintiff's bill is to be taken *pro confesso* and a decree to be made accordingly." (Bl. Com., Book III, p. 444.)

These modes of proceeding have been improved in England as well as in the United States. " The statute (5 Geo. II, c. 25,) provides that where the defendant cannot be found to be served with process of subpœna and absconds (as is believed) to avoid being served therewith, a day shall be appointed him to appear to the bill of the plaintiff, which is to be inserted in the London *Gazette*, read in the parish church where the defendant last lived, and fixed up at the

Royal Exchange ; and if the defendant doth not appear upon that day, the bill shall be taken *pro confesso.*" (Bl. Com., Book III, p. 445.)

So whatever meaning may be attached to the phrase " proceeding according to the course of the common law," as used in the books, it cannot be understood to mean personal or actual service of process only.

The affidavit of Dodge, under the rule in *Steinbach* v. *Leese,* 27 Cal. 298, fails to state that he is the printer, foreman or chief clerk of the Morning or Daily *Globe.* As to whether he was either, the record is therefore silent, and in conformity with the rule already stated—if the remainder of the record was also silent upon that subject—we would be bound to presume that he was one or the other, or that legal proof to that effect was actually made. The fact that publication was made in that paper is one thing, and the relation of Dodge to the paper quite another. There is nothing in the statute which requires that the latter should have been proved by Dodge himself. It could have been proved by any other competent witness to whom the relation was known. But if otherwise, the result would be the same ; for in either event it must be presumed that the Court did its duty in the premises and required proof of his relation to the paper. Upon the presentation of Dodge's affidavit the Court was bound to say : " It does not appear from this affidavit that the person by whom it is made is the proper person to make it ; proof that he is must therefore be made before judgment can be rendered," and it must be presumed that it is so declared, and that the absent proof was supplied, either by Dodge himself or some other competent witness to whom the fact was known.

But the remainder of the judgment roll in the case now under consideration is not silent upon the subject. The judgment itself states that service has been made " according to law and the order of the Judge of this Court." In view of this direct statement as to a matter which the Court was as competent to determine as any other matter involved

in the case, we would be bound to presume, as already shown, that proof of publication by the proper person was in fact made, notwithstanding that part of the roll denominated " proof of service " showed a state of facts from which a want of jurisdiction would be apparent.

There being no distinction in the respect under consideration, between cases of actual and constructive service, the case of *Alderson* v. *Bell* is directly in point. That was an action of ejectment. The plaintiff was the purchaser of the premises at a Sheriff's sale, under a decree in a foreclosure case. He offered in evidence the judgment roll in the foreclosure case. The defendant demurred to the evidence upon the ground that a want of jurisdiction was apparent upon the face of the judgment roll. The only proof of service was what purported to be the written admissions of the defendants, stating time, but not place, unaccompanied by any proof of the genuineness of the signatures. The decree recited that the defendants had been regularly served with process, or had waived service by their admission. The Court (Mr. Justice Field) said : " It is well settled that Courts will take judicial notice of the signatures of their officers as such; but there is no rule which extends such notice to the signature of the parties to a cause. When, therefore, the proof of service of process consists of the written admissions of the defendants, such admissions, to be available in the action, should be accompanied with some evidence of the genuineness of the signatures of the parties. In the absence of such evidence the Court cannot notice them.

" In the foreclosure case, it is to be presumed that such evidence was furnished to the Court before the judgment was rendered. The decree recites that the defendants had been regularly served with process, or had waived service by their acknowledgment. This is sufficient evidence that the requisite proof was produced to establish the genuineness of the signatures of the defendants to their admission. Even if there were no such recitals in the decree, and there

was an entire absence of evidence in the record on the point, still the presumption would be in favor of the jurisdiction of the Court and the regularity of its proceedings, and for the want of such evidence the decree cannot be impeached in this collateral action." (9 Cal. 321.)

So in the case at bar. The Court could not notice the affidavit of Dodge, in the absence of evidence that he was either the printer of the *Globe*, or foreman, or chief clerk, and it is to be presumed that such evidence was furnished to the Court before the judgment was rendered; and such would be the presumption if the record was silent. To the like effect is the case of *Kipp* v. *Fullerton*, 4 Min. 473.

Under the view taken, it is unnecessary to notice the affidavit of McClosky as to personal service at Washington. The point in regard to it, however, is the same as the one just considered, and admits of the same answer.

Judgment reversed and new trial ordered.

SAWYER, J., concurring specially:

I concur in the judgment, and in the reasoning of my brother, SANDERSON, upon which it is sustained. I will add a word respecting the record, and for the purpose of alluding to *Forbes* v. *Hyde*, 31 Cal. 342. While the points discussed and decided in that case are correctly determined, I am satisfied that the opinion stops short of the entire truth in regard to judgments of the kind there in question. In that case, and in *Braly* v. *Seaman*, 30 Cal. 610, the parties, relying on the judgment, introduced in evidence as a part of the record and of their case, the order for publication of summons, and affidavits upon which they were based, and they were treated as parts of the record without discussion. And in *Forbes* v. *Hyde*, the order for publication, and the judgment itself, recited the affidavits as the basis upon which they rested, thus showing by direct reference, that the jurisdiction of the Court, if any attached, depended upon those affidavits, and the publication in pursuance thereof, and on

nothing else. The record contained an express statement that there were no other affidavits filed. Treating the affidavits and order as parts of the record, all that was done affirmatively appeared, and as the acts performed did not effect a service, the want of jurisdiction was apparent.

In the present case the question is directly made for the first time, as to what constitutes the record within the meaning of the rule, and what facts appearing in such record disclose a want of jurisdiction. These points have been elaborately argued, and numerous authorities bearing upon the question cited. At common law " a record signifies a *roll of parchment* upon which the proceedings and transactions of a Court are entered or drawn up by its officers, and which is then deposited in its treasury *in perpetuam rei memoriam.*" (3 Steph. Com. 583; 3 Bl. Com. 24; 2 Burr. Law Dic., Tit. "Record.") "A Court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, which rolls are called the records of the Court, and are of such high and supereminent authority that their truth is not to be called in question." (3 Steph. Com. 583; 3 Bl. Com. 24; 2 Burr. Law Dic., Tit. "Record.") In Courts not of record the proceedings are not enrolled. (Ib.) The privilege of having these enrolled memorials constitutes the great leading distinction in English and American law between Courts of record, and Courts not of record, or, as they are frequently designated, superior and inferior Courts. (Ib.) "In the United States paper has universally supplied the place of parchment as the material of the record, and the roll form has, on that account, fallen into disuse ; but in other respects the forms of the English records have, with some modifications, been generally adopted." (Burr. Law Dic., Tit. "Record.") But whether in parchment or in paper, in the roll form or otherwise, this judgment roll is what is known in law as the record—the *technical record*—and is what is meant by Courts and law writers when they speak of records of superior Courts, or Courts of record. This technical record is the

only strict and proper proof of the proceedings of the Courts
in which they are preserved, and are regarded in law as
proof of so absolute a nature as to admit of no contradic-
tion. In the language of Lord Coke, " they import in them-
selves such incontrollable credit and verity, as they admit
no averment, plea or proof to the contrary." (Coke's Litt.
260 *a;* 3 Steph. Com. 583; 3 Bl. Com. 24; 2 Burr. Law
Dic., Tit. " Record.") As to the history and character of
the record, etc., see, also, Burr. Pr. 16, 17, 247; Steph. Pl.
25, 27, 81, 111. So inviolable is the rule regarded, that,
on the issue of *nul tiel record,* when a record of a judg-
ment corresponding with the plea was produced, it was held
to be inadmissible to rebut this proof by showing a rule of
the same Court entered in the minutes at·a subsequent term
setting aside the judgment for irregularity. (*Crosswell* v.
*Byrnes,* 9 John. 290.) The Court say: " There is no doubt
of the competent power in the Court to make such a rule;
but the question is, whether the entry of such a rule upon
the minutes is to be received as evidence against the record.
It appears to be contrary to all well settled technical rules
upon the subject to give the entry that effect. A record
imports verity, and can only be tried by itself. The *vacatur*
ought to be enrolled, or entered of record as much as the
rule for judgment. The Court could not receive the entry
on the minutes of a rule for judgment as evidence to sup-
port a plea of a former recovery, and why should an entry
vacating a judgment be received to contradict the enrollment
of the judgment? The maxim in this, as well as in other
cases, is, that *nihil tam naturale, quam quidlibet dissolvi eo modo,
quo ligatur.* (1 Jenk. Cent. 120.) To give an entry on the
minutes that authority would destroy the certainty, order
and solemnity of enrollments; and it has been frequently
held that the Courts cannot regard any proceeding as a mat-
ter of record until it is enrolled." (1 Salk. 329; 1 Ld. Raym.
243; Jenk. Cent. 25; *Crosswell* v. *Byrnes,* 9 John. 289, 290;
see, also, *McKnight* v. *Dunlop,* 4 Barb. 39, 40; *Moore* v. *Ris-
dell,* 1 Ld. Raym. 243.) Thus the order vacating a judgment,

although entered in the minutes of the Court, until enrolled, could not be given in evidence against the judgment, for, until enrolled, it constituted no part of the record—the technical record, which imports absolute verity. And this, as before remarked, is the record which Courts refer to, when they speak of matters appearing upon the record of Courts of record. When a mistake in making up the record occurs, the Court of which it is a record may, at the proper time, and in the proper mode, amend it so as to make it speak the truth. (3 Bl. Com. 24; 3 Steph. Com. 583.) But till amended, when brought collaterally in question, it cannot be impeached, even by the files and minutes of the Court, by the aid of which the record itself might be amended by the proper Court. In a general sense, all the files and minutes of the Court are often spoken of, in modern times, as the records of Courts, and this use of the word tends to lead to a confusion of ideas.

In examining questions of the kind now under consideration, it must always be borne in mind, that it is only the record, technically so called, that imports absolute verity, and is to be tried by itself—*teste meipso* (see *Sherman v. Story*, 30 Cal. 257)—whenever its existence is called into question; that is to say, its existence and purport is to be determined by a bare inspection of the document offered as a record. But in those Courts and tribunals where the proceedings are not enrolled or recorded, as well the existence of their proceedings, as the truth of the matters therein contained, shall, if disputed, be tried and determined by a jury. (3 Bl. Com. 25.)

Records were formerly made up in the presence of the Court as the case progressed, but were subsequently prepared out of Court after the case was closed, either by the clerk or the attorneys. (1 Burr. Pr. 247.) They consisted of the placita, memorandum, pleadings, imparlance or continuance, etc. (1 Burr. Pr. 247.) Examples of judgment records or rolls under the former system, will be found in 3 Burrill's Ap., p. 132, *et seq.*, and in a criminal case in 4 Bl. Com. Ap. The judg-

ment record has recently been somewhat modified by statutory provisions in some, if not all, the States; but they all, where a judgment roll is made up, contain the substance of the former rolls.   Section two hundred three of the Practice Act expressly provides for a judgment roll, and prescribes what it shall contain.   It omits the formal parts—the placita, memorandum, continuances and connecting links—some of which have been rendered unnecessary by changes in our proceedings, but contains all the essentials of the common law record.   In the case of a default, it consists of the summons with the affidavit or proof of service, complaint with memorandum indorsed upon the complaint that the default of the defendant in not answering was entered, and a copy of the judgment.   This is the technical record, which imports absolute verity and cannot be impeached collaterally, even by the files and minutes of the Court itself not forming a part of the record.   This is the record which must show affirmatively a want of jurisdiction, in order to render the judgment void. Section thirty-three of the Practice Act declares what shall constitute proof of service, and this does not include either the affidavit or order for publication.   They, therefore, do not constitute a part of the record, and the verity of the record cannot be impeached by them.   The cases of a similar character hitherto decided by this Court were tried, argued on both sides, and decided on the assumption that the affidavits and order of publication constituted a part of the record. In this respect there was error.   In this case there were two facts required to be made to appear to the Court below. One is the fact of publication of summons, and the other is that the party making the affidavit of publication was the printer, his foreman or principal clerk.   The fact of publication could be proved by no other party under the statute. (Sec. 33.)   But there is nothing requiring the fact that the party making the affidavit is the printer, foreman or principal clerk, to be proved by him, also, or that this proof shall

be in writing. I can see no reason why that fact may not be proved by oral testimony in Court, or in any other mode recognized by law for proving other facts in the course of ordinary litigation. In the record now before us, there is an affidavit stating all the facts necessary to show a service by publication, but it does not show that the affiant was the printer, foreman, or chief clerk. If we can regard it at all, it shows a publication. If we cannot regard it, for the want of proof, that it was made by the proper party, then the worst that can be said is, that it does not affirmatively show a publication. It certainly does not affirmatively show that there was no publication. It simply does not appear affirmatively whether there was or was not a service. But the judgment itself says that it did appear " to the Court that the summons and complaint in this cause have been duly served on the defendants according to law and the order of the Judge of this Court," and thus the fact of service affirmatively appears in the record. This is a fact which the Court had jurisdiction to find, and according to the record it was found ; and the record, whether correct or not, imports absolute verity, and no Court, in a collateral proceeding, can go behind it, or to the files or minutes, to impeach it. There is no inconsistency in the record. The Court exercises the same functions and the same jurisdiction in determining whether there was a service, whether personal, and the evidence is the certificate of the Sheriff, or affidavit of a party competent to serve the process, or by publication, and the evidence is by the affidavit of the printer. And I see no reason why the same presumption should not arise on the record in one case as in the other. It is a record in either case, for the statute makes it so in one case as well as in the other. And the record must be tried by itself alone. There is no new jurisdiction, either as to the person or subject matter conferred on the Court by the statute authorizing service by publication of summons. The service is made in cases involving the ordinary process of the Court. Only the

mode of serving process is modified in certain cases within its ordinary jurisdiction. In some of the States a service was formerly, and, doubtless, now is, made by leaving a copy of the summons at the residence of the defendant, with some person of suitable age and discretion, or at his last known place of residence. I am not aware that any different rule of presumptions in Courts of record was applied to the record of a domestic judgment on a service of this kind, from that applied to a service upon the party himself. Yet this can no more be called a personal service than a service by publication. The only question, at last, is: was there a service in any legal mode?—and the Court has jurisdiction to determine that question. If the Court determining the question is a Court of record, the judgment record imports absolute verity, and whatever that says must be taken as true. If the record in fact does not speak the truth, the only remedy of the party is to attack it directly on appeal or in the Court of which it is a record, if under the circumstances it can be there corrected, or by some direct suit or proceeding known to the law to vacate it.

A caution is here necessary. In modern practice, in some of the States, there is no judgment roll or record made up, even in Courts of record, as in Iowa, and, at one time, in Michigan. In these States perhaps the minutes and files of the Court might be regarded as the record, and possibly everything appearing therein might be considered. (*Morrow* v. *Weed*, 4 Iowa, 127; *Norvell* v. *McHenry*, 1 Mich. 227.) In considering the numerous decisions in the several States, it is always necessary to understand the local law affecting the question, and this is not always stated in the opinions, or otherwise accessible. In this State we have a record, and the statute expressly provides what it shall contain.

The following authorities bear upon the questions arising in this case, and in a greater or less degree sustain the conclusion attained: *Tallman* v. *Ely*, 6 Wis. 244; *Foot* v. *Stevens*, 17 Wend. 484; *Newman's Lessees* v. *City of Cincinnati*,

18 Ohio, 323; *Horner* v. *Doe*, 1 Cart. 131; *Boker* v. *Chapline*, 12 Iowa, 205; *Sheldon* v. *Wright*, 5 N. Y., 1 Seld., 517; *Voorhies* v. *Bank of United States*, 10 Pet. 449; *Grignon's Lessees* v. *Astor*, 2 How. U. S. 319; *Richards* v. *Skiff*, 8 O. St. 588; *Moor* v. *Starks*, 1 O. St. 369; *Hart* v. *Seixas*, 21 Wend. 45; *Carson* v. *Pearl*, 4 J. J. Marsh. 93, 94; *Heirs of Biggs* v. *Blue*, 4 McLean, 149; *Kipp* v. *Fullerton*, 4 Minn. 480; *Hardy* v. *Gholson*, 26 Miss. 72; *Cooper* v. *Sunderland*, 3 Iowa, 114; *Morrow* v. *Weed*, 4 Iowa, 78; *Potter* v. *Merchants' Bank*, 28 N. Y. 654, 655. Also, see cases cited by appellant, and authorities cited in the cases above referred to.

The judgment should be reversed and a new trial had.

SHAFTER, J., concurring specially:

There are only two jurisdictional facts required or allowed by the Practice Act to be represented in the judgment roll in cases where service has been had by publication. The first is an affidavit of the fact of publication, and the second is that the person making the affidavit was the printer of the paper in which the notice was published, or his foreman, or principal clerk. If it appears affirmatively on the face of the record, in *Hawes* v. *Jones*, that either of these requirements was not complied with, then the judgment therein can be attacked collaterally on that ground. But it does not so appear. The affidavit of Dodge goes to the fact of publication, and his capacity or competency to make the affidavit is covered by the recital in the judgment that the defendant was duly served according to law. This recital imparts absolute verity, and no suggestion to the contrary can be listened to. (*Alderson* v. *Bell*, 9 Cal. 315.) In *Steinbach* v. *Leese*, the judgment contained no such recital, and one only of the two points was covered by the affidavit; and therein lies the distinction between this case and that. So far, then, from its appearing affirmatively, by the record in *Hawes* v.

*Jones,* that the Court had not jurisdiction, it appears affirmatively that it had.

I concur in the judgment.

[NOTE.—These opinions were delivered at the October Term, 1867.]

By the Court, CROCKETT, J., on petition for rehearing:

We have given to the petition for rehearing in this case the careful consideration which was due to the importance of the question involved, and the earnestness with which a rehearing has been requested by eminent counsel has induced us to review carefully the opinions heretofore delivered; but we see no reason to change or modify the conclusions already announced, nor does the petition for rehearing present any new phase of the legal propositions involved in the case.

We adhere to the following propositions, to wit:

1st—That the efficiency of the service must be decided upon the judgment roll.

2d—That the affidavit and the order of the Judge, directing the publication, constitute no part of the judgment roll, which, under section two hundred and three of the Practice Act, is to consist, in case the complaint be not answered by any defendant, of " the summons with the affidavit or proof of service, and the complaint with a memorandum indorsed upon the complaint that the default of the defendant in not answering was entered, and a copy of the judgment."

3d—That the order of the Judge directing the publication and the affidavit on which it was founded constitute no part of the proof of service by publication to be annexed to and forming a part of the judgment roll. The statute distinctly declares that in case of service by publication, the proof of service shall consist of " the affidavit of the printer, or his foreman or principal clerk, showing the same, and an affidavit of a deposit of a copy of the summons in the Post Office, if the same shall have been deposited." (Practice

Act, Sec. 33.) However defective the statute may be as to proof of service in such cases, it is not our province, by a system of judicial legislation, to supply its omissions. That this provision is faulty and incomplete is quite obvious, but its defects must be cured by the Legislature and not by the Courts.

Some stress is laid by counsel on the phrase " showing the same " in this section. If we comprehend the argument aright, it is that from this phrase it is to be inferred that the order of the Judge must, of necessity, constitute a part of the proof of service, and therefore go into the judgment roll, because otherwise the phrase " showing the same " would be absurd and meaningless. But it is apparent from the context as well as from the subject matter, that this phrase was intended only to require that the affidavit should show in what paper the publication was made, between what dates, and how often. The counsel insists that this, of itself, would show no service. If this be so, it is the vice of the statute, which has explicitly declared that it shall constitute the proof of service. We have no power to require other proofs than those the statute specifies.

4th—That unless the record shows to the contrary, it will be presumed that a Court of general jurisdiction had acquired the necessary jurisdiction over the parties, to support its judgment; and in this respect the record cannot be impeached in a collateral proceeding by proof *aliunde*.

5th—That when the judgment, as in this case, recites the fact that the defendants have been duly served with process, it is a direct adjudication by the Court upon the point, and is as conclusive upon the parties as any other fact decided in the cause, provided it does not appear affirmatively, from other portions of the record, that the recital is untrue. As, for example, if the judgment recites a due service of process, and refers, on its face, for proof of the service to the Sheriff's return on a particular summons on file in the case, as part of the judgment roll, if it appears, on inspecting the return,

that the service is bad, the recital in the judgment would, in that case, appear affirmatively from the record to be untrue, and the judgment would be void. But if the judgment for proof of service refers generally to a paper or papers on file, or to a summons and Sheriff's return thereon without specifying any particular paper, summons or return, and if there be found on file papers showing a defective and void service, and nothing further appears, the law to support the judgment would presume that the Court had other sufficient proof of service than that which remains on file; and it would not in that case appear affirmatively from the record that the recitals in the judgment were untrue. The recitals would therefore be conclusive proof of service. But if the judgment recites a due service of process without specifying how the service was made or referring to any paper as proof of it, the recital is conclusive on the parties in a collateral proceeding; unless, as before stated, it should affirmatively appear in some manner from other portions of the record that the recital was untrue. It is objected, however, by counsel, that such recitals have no proper place in the judgment, and ought not for that reason to be deemed conclusive, nor even *prima facie* proof of service. But, on examining the course of proceedings in Courts of equity in England and in most of the States of the Union, we find the usual practice has been, in entering decrees upon bills taken *pro confesso*, to recite the fact of service, and that the defendant is in default. But if this were not the usual practice, the recital in the judgment of the fact of service can in no manner impair its effect as an adjudication on the point. It is as conclusive in this form as if stated in a separate, interlocutory judgment, adjudicating only the fact of service.

We may remark, in conclusion, that if upon reason and authority, the questions decided in this cause were left in such extreme doubt that we might well incline to the one side or the other, considerations of public policy would impel us to solve the doubt in such manner as to promote the

repose of titles held under judicial sales, rather than by technical niceties to overthrow them.

Rehearing denied.

[NOTE.—The foregoing opinion was rendered at the January Term, 1868.]