McDONALD *et al.* v. WILLIAM G. BADGER—HARRIET J. BADGER, INTERVENOR.

THE declaration of homestead may include more than one lot of land in the homestead claim, if they are contiguous, and their value in the aggregate does not exceed $5,000.

Where the homestead claim, as described in the declaration, includes several lots of land ; and the lot on which the homestead residence is situated equals or exceeds $5,000 in value, the homestead claim is void as to all the lots included therein, over and above the one thus occupied as the homestead residence.

Where the declaration of homestead claimed and described two lots of land, and the one on which the homestead residence was situated was worth $5,000 or more, and both lots were sold on an execution, issued on a judgment against the husband : *held*, that the purchaser at the execution sale acquired a valid title to the lot on which the homestead residence was not situated, and could maintain ejectment therefor.

A deed to the wife, of real estate, which is upon its face a deed of purchase, and recites a consideration paid, is presumptive evidence that the property thereby conveyed belongs to the community, and is liable as such for the debts of the

husband; but this presumption may be overcome by clear and conclusive proof that the property was purchased with separate funds of the wife.

· The execution defendant cannot defeat the recovery, in ejectment, of the purchaser at the execution sale, by setting up title in a third person.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

At the Marshal's sale referred to in the opinion, the land was sold in three parcels; the lot, thirty feet front, on which the residence was, in one parcel; the strip, four feet nine inches wide, in a second parcel; and the lot, thirty-four feet front, in a third parcel.

· *D. P. & A. Barstow,* for Appellants.

The referee who tried the case, as well as the Judge who passed upon the motion for a new trial, held that this property was liable for Badger's debts. The only objection to our right of recovery was, that at the time of the levy and Marshal's sale, there was a segregating of this lot from the other, or setting apart of the other portion of the whole tract from this for a homestead; and the case of *Gary* v. *Estabrook et al.* (6 Cal. 457), was relied on as an authority in point. But the case at bar differs entirely from that case, as the Court will see by a reference to it. At the Marshal's sale, three lots were sold: the homestead lot, the strip four feet and nine inches wide (between the two lots), and the lot thirty-four feet front. We do not claim that the homestead lot passed at the sale, but we do contend that the remainder of the land did. There was no call for an appraisement of the premises, and a setting apart of the homestead, in this case.

*J. B. Crockett,* for Respondent.

The whole property being covered by the homestead claim, it was not liable to forced sale on execution; and the purchasers at such sale cannot recover, in ejectment, the excess over $5,000. Ejectment is not the proper remedy; nor a sale under execution, against the husband, the appropriate method of reaching the excess. ( *Cook* v. *McChristian,* 4 Cal. 23 ; *Gary* v. *Estabrook,* 6 Id. 457 ; *Ackley* v. *Chamberlain,* 16 Id. 181 ; *Bowman* v. *Norton,* Id. 403 ; *Williams* v. *Young,* 17 Id. 403.) The plaintiff in this

McDonald *v.* Badger.

suit, therefore, acquired no title by the Marshal's deed, which can avail him in this action.

If there was any title in Badger to the strip covered by the conservatory, reserved in the sale to Scott, or to any other part of the premises, it passed by the proceedings in insolvency to his assignee; and there was, therefore, no interest remaining in him to be sold on execution. (*Taffts* v. *Manlove*, 14 Cal. 47; *Lambert* v. *Slade*, 4 Id. 337; *Bank of Tenn.* v. *Horn*, 17 How. 157.)

*Appellants*, in reply.

We have always regarded the question of homestead, as the real point in the case. Conceding the claim to be good, as to the original thirty-foot lot, we have contended that the after-acquired property could not be invested with the character of homestead property, because the benefits conferred by the Homestead Act were not intended to extend so far. The design of the act is to secure to every family a homestead worth, at most, $5,000. That Badger's family had on the thirteenth of June, 1855. But they claim more. They claim, by virtue of that act, as homestead property, land subsequently acquired, worth, at least, $10,000; and this Court is asked to assent to the proposition, that where a party who has "selected" his homestead worth $5,000, and upwards, afterwards acquired other land in the neighborhood of his homestead, this land also becomes invested with homestead rights. It was settled long ago, that a defendant, in ejectment, situated as Badger is, in this case, cannot set up an outstanding title in a third person. And the reason of the rule is, that by the act of sale and purchase, the judgment debtor becomes the tenant of the purchaser, and cannot deny his landlord's title. (*Jackson* v. *Graham*, 3 Cairns, 188; *Jackson* v. *Bush*, 10 John. 223.)

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover the possession of a lot in the City of San Francisco, sixty-eight feet nine inches front on Second Street, and one hundred and twenty-five feet in depth. The plaintiff claims title to the premises under and by virtue of a deed executed

by the United States Marshal, dated October, 1860, under and in pursuance of a Marshal's sale on execution on the thirty-first day of January, 1860, issued upon a judgment recovered by the plaintiffs in the United States Circuit Court for the Northern District of California against the defendant on the nineteenth day of November, 1858. Mrs. Badger, the wife of the defendant, intervened, claiming the premises as a homestead, and as her separate property.

The principal questions which arise in this case depend upon these claims to the property set up by the wife : the first of which we propose to examine is that relating to the homestead. It appears that in 1855 Badger executed, acknowledged, and recorded an instrument purporting to be a declaration of homestead on thirty feet of these premises, which was all he owned at that time. This paper can have no force or effect—as the law in force at that time did not authorize the execution or recording of such instruments. He was, however, residing upon this lot of thirty feet with his family, and it constituted and was his homestead under the laws then in force. Afterwards, on the third day of May, 1861, Mrs. Badger duly executed, and acknowledged, and procured to be recorded, a declaration of homestead, which includes not only the thirty feet occupied as a homestead in 1855, but the adjoining lot, which had been purchased since 1855, of thirty-eight feet nine inches front by one hundred and twenty-five feet in depth. This declaration of homestead includes the premises now in controversy.

The referee finds that the lot, thirty feet wide, with the house, is of the value of $7,500, and the thirty-eight feet nine inches front is of the value of $4,800. The appellants contend that as the value of these lots exceed the $5,000, the value of the homestead allowed by law, and as they are separate lots, acquired by different titles, therefore the homestead claim should at least be limited to the lot thirty feet front on which the dwelling-house stands, and that the lot thirty-eight feet nine inches front should be held and deemed free and clear of the claim of homestead. There can be no valid objection to including more than one of several contiguous lots in the homestead claim, provided their value does not exceed in the aggregate $5,000, the sum allowed by the homestead law. But a person cannot thus include more than one lot in the home-

stead declaration where the value of such lot, with the dwelling thereon, equals or exceeds $5,000. And if it is attempted, the homestead claim will be held void as to all separate lots included therein, over and above the one thus occupied as a residence. The homestead claim cannot, therefore, in this case be held to extend beyond the lot of thirty feet front. The appellant in his brief does not claim that this lot passed by the sale to the plaintiffs, so that it is unnecessary to examine either the title set up to it by Mrs. Badger as her separate property, or any questions which might have been raised owing to the fact that its value exceeds $5,000.

The next questions to examine relate to the other lot thirty-eight feet nine inches front. It appears that on the eighteenth day of December, 1855, the defendant, Badger, purchased this lot and took a deed therefor from one Slade ; that afterwards Badger sold and conveyed the southern portion, to wit: thirty-four feet front on Second Street by one hundred and twenty-five feet deep, to one Scott, thus leaving the title to the northern portion, four feet nine inches wide by one hundred and twenty-five feet deep still in Badger. On the twenty-fourth day of April, 1857, Scott conveyed this south thirty-four feet by deed of bargain and sale to Mrs. Badger for the sum of $3,000, of which $1,000 was paid in cash and the remaining $2,000 was secured by a mortgage on the premises executed by Badger and his wife jointly, and they also gave their joint promissory note for the amount, which note and mortgage still remain unpaid.

The intervenor claims that she made this purchase of Scott for her own sole, and exclusive use, and benefit, as her own separate estate ; and that the purchase money paid thereon was her own separate property. This deed is not copied into the transcript, and we are unable to determine from the record whether the property was conveyed to her sole, separate, and exclusive use, or not. The referee who tried the cause found, that the cash payment of one thousand dollars was made as follows, to wit: That one Phinney, who resides in the City of Boston, had before then left with said Wm. G. Badger, for collection, a promissory note of another person, with authority to loan out the money, when collected, on Phinney's account; that the note was paid to Badger shortly before

McDonald *v.* Badger.

the conveyance from Scott to Mrs. Badger; that, to enable Mrs. Badger to make the cash payment to Scott, Badger loaned to his wife the one thousand dollars collected for Phinney; that, subsequently, a portion of the one thousand dollars was refunded to Phinney by the sale of a piano, which was the separate property of Mrs. Badger, being between three hundred and fifty and four hundred dollars. The referee also found, that the intervenor was not entitled to maintain her intervention, and a judgment was rendered accordingly, from which she has not appealed. The referee also found, that the plaintiffs were not entitled to recover, and they appeal from the judgment rendered thereon. The decision of the referee was adverse to the claim of title set up by Mrs. Badger; and as she has not appealed from that decision, it is conclusive against her, so far as relates to her claim to it as her separate property.

The law is well settled by the decisions of this Court, that a deed of purchase to the wife is presumptive evidence that the property thereby conveyed belongs to the community, and is liable as such to the debts of the husband, and can be disposed of by him like any other community property. But this presumption may be overcome by clear and satisfactory proof that it was acquired by the separate funds or property of either the husband or wife; and the burden of proof to rebut the presumption lies upon the party claiming it as separate. The fact that such a deed is made to the wife, instead of the husband, creates no presumption that the property is her separate estate. The conveyance being by deed of purchase, excludes all presumption that this property was acquired by gift, bequest, devise, or descent. (*Meyer* v. *Kinzer*, 12 Cal. 247; *Smith* v. *Smith*, Id. 216; *Pixley* v. *Huggins*, 15 Id. 127.) The proof in this case does not clearly and satisfactorily show that this lot was purchased with the separate funds or property of the wife. It cannot, therefore, be held or deemed her separate estate; but it was community property, and liable to the debts of the husband, and subject to his control and disposition.

It further appears, that, on the third day of June, 1857, the defendant, Badger, filed his petition in a proper Court, to obtain a

McDonald v. Badger.

discharge from his debts under the Insolvent Law; that the proper proceedings were had, and, in due time, the Sheriff was duly appointed his assignee; and thereupon, Badger made, executed, and delivered to the assignee a general assignment, in writing, of all his estate, in general terms, without specifying any particular property. After proper proceedings, he obtained a decree discharging him from his debts. The respondent contends, that the assignee in this case took, by operation of law, all the estate of the debtor, whether named in his schedule or not; that the title to this lot was thereby vested in the assignee, who held the same for the benefit of the creditors generally, in accordance with the insolvent law; and therefore the plaintiffs acquired no right, title, or estate in the property by their subsequent purchase under the judgment. It is unnecessary to determine these questions, because it is a rule of law that the execution defendant cannot defeat the purchaser's recovery of his possession, by setting up a title in some third person. This rule is founded in good sense and sound policy. (*Jackson* v. *Graham*, 3 Caines, 188; *Jackson* v. *Bush*, 10 J. R. 223; *Jackson* v. *Davis*, 18 Id. 7.) It follows, that this outstanding title in the assignee is no defense to the action.

The respondents contend, that the action is barred by the Statute of Limitations, on the ground that the defendant has not been in the possession of the thirty-four-foot lot since the deed from him to Scott, dated in January, 1856, and this action was commenced December 21st, 1860. This, however, was within five years, the time limited for actions of this kind. But, even if it had not been, the defendant, Badger, has been in possession of this lot ever since the deed from Scott to his wife. The deed, as has been shown, conveyed a community, and not a separate, estate; the possession followed the estate, and the husband is therefore to be deemed as having been in possession under it, and not the wife. This defense is therefore untenable. It follows, from the view we have taken of this case, that the referee erred in finding that the plaintiffs were not entitled to the possession of the lot, described as fronting thirty-eight feet nine inches on Second Street, and running back one hundred and twenty-five feet.

The judgment is therefore reversed, and the cause remanded for a new trial.

McDonald *v.* Badger.

On petition for rehearing, CROCKER, J. delivered the following opinion—NORTON, J. concurring:

A rehearing is urged on the ground that one point presented by the appellant in his brief was not passed upon in the former opinion. It is contended that as the homestead declaration covers the *whole* property, including both lots, therefore, even though the value exceeds $5,000, the excess cannot be recovered in ejectment: that it was not liable to forced sale on execution. Several decisions of this Court are cited which sustain the principle that a judgment is no lien upon the homestead, and that the same cannot be sold on execution. (4 Cal. 23; 16 Id. 181–213; 17 Id. 403.) In another case cited, that of *Gary* v. *Estabrook* (6 Cal. 457), it was held, that where the homestead claimed by the defendant in execution had been ascertained by appraisement to exceed $5,000, a sale thereof should not be made by the Sheriff under execution until an exact appraisement of the value of the premises is obtained, so that he could sell and convey a definite undivided interest therein. That is, to illustrate, if the homestead should be found, upon appraisement, to be worth $10,000, then as the undivided one-half only would be exempt under the Homestead Law, he could then proceed to sell and convey the other undivided half not exempt. This rule properly applies to a case of a single lot or tract of land on which the dwelling of the debtor stands, but it is not necessary to take that course where the homestead covers two or more lots, on only one of which is the dwelling of the debtor. As stated in the former opinion, the debtor may include several contiguous lots in his homestead claim, provided they do not exceed in value $5,000; but if the lot on which the dwelling stands equals or exceeds in value the $5,000, the attempt to include any other lot or lots will fail. If inserted in the declaration filed, they will not in such case form any part of the homestead, any more than as though they had been inserted therein. The law requires that the debtor act in good faith, and not under cover of a law made for his special benefit, attempt to embarrass his creditors, or hinder, or delay them in collecting their just debts. It is better for the debtor to treat the lot or lots not occupied by the dwelling as free

from the homestead, and therefore liable to levy and sale on execution, like any other property not exempt from execution, than subject the debtor to the risk of the loss of the whole homestead property, on the ground that he had included an excessive quantity of value in his declaration for the purpose of hindering, delaying, and defrauding creditors.   As to the objection that the value of the separate pieces of property, as reported by the referee, was taken at a date subsequent to the filing of the declaration of homestead, and that the property may have greatly improved in value in the meantime, we think it is entitled to no weight, for the reason that there was no proof or finding as to the value at the time of the filing of the declaration; in which case the presumption would be that the value would be the same, as there properly could be no presumption of either an increase or diminution of the value in the intermediate time.   We do not wish to be understood, however, as holding that the value at that date is to fix the extent or quantity of land exempt as a homestead for all future time, regardless of the subsequent increase of value caused by the construction of improvements or otherwise.   That is a question to be determined when it is properly before the Court.

The rehearing is denied.