FERDINAND VASSAULT *v.* FRANKLIN B. AUSTIN, MARY A. B. AUSTIN, HIS WIFE, AND MANSFIELD COMPTON.

SUPERIOR COURT OF SAN FRANCISCO.—The judgments of the late Superior Court of the City of San Francisco import the same absolute verity as those of the District Courts.

JURISDICTION OF PERSON IN SUPERIOR COURT.—If a judgment of the late Superior Court of the City of San Francisco recites that the defendant had been regularly served with process and had failed to appear, and that his default had been duly entered, these recitals are conclusive upon the point of jurisdiction of the person, although the return of service of summons is not of itself sufficient for that purpose.

ACT CREATING SUPERIOR COURT OF SAN FRANCISCO.—The Act creating the late Superior Court of the City of San Francisco was constitutional. Upon this point *Seale* v. *Mitchell*, 5 Cal. 403, and *Hickman* v. *O'Neal*, 10 Cal. 294, affirmed.

*Stare Decisis.*—Where important rights of property had grown up under a decision of the Supreme Court, and many years have elapsed since the same was rendered, and its correctness has been tacitly admitted in other cases, the question will not be reopened.

CONSTRUCTIVE NOTICE OF UNRECORDED DEED TO WIFE.—The fact that both husband and wife join in a deed of land, which deed is known to a creditor of the husband claiming the land under the husband by a subsequent Sheriff's sale, is not constructive notice to such creditor that the wife held a prior unrecorded deed making the land her separate property.

IDEM.—Such fact is not sufficient to put the purchaser at the Sheriff's sale on inquiry as to the wife's unrecorded deed.

RECORD NOTICE OF DEED.—The record of a deed void as to any person is not notice to such person of anything except the existence of such void deed. It is not notice of an unrecorded valid deed.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action of ejectment to recover a lot of land at the northwest corner of Bush and Larkin streets, in the City and County of San Francisco, commenced January 24th, 1863.

On the 25th of August, 1863, Abner H. Barker recovered a judgment against defendant, F. B. Austin, in the Superior Court of the City of San Francisco, for two thousand nine hundred and forty-six dollars and ten cents, and twenty-six dollars and twenty-five cents costs. On the 26th day of November, 1860, an execution was issued on the judgment and levied on the demanded premises by the Sheriff, who sold the same to G. W. Ryckman, and in due time executed to him a deed. Ryckman, on the 24th of February, 1862, conveyed the premises to the plaintiff. March 8th, 1862, both of said deeds were recorded in the office of the Recorder of San Francisco. At the time of the Sheriff's sale the plaintiff was the owner and assignee of the judgment, and Ryckman bid in the property for the benefit of plaintiff for the sum of four thousand four hundred and thirty-six dollars, which did not satisfy the judgment, as it bore interest at three per cent per month.

On the 22d day of February, 1855, defendant F. B. Austin made a deed of gift of the property to his wife, the defendant Mary A. B. Austin. At the time the deed was given the husband owed about eleven thousand dollars, and was not solvent. The debt on which the judgment was recovered was contracted in 1854. The deed of gift to the wife had not been recorded at the time of the trial of this cause. Neither Ryckman nor plaintiff had knowledge of the existence of the unrecorded deed when they purchased, nor had they any knowledge that she claimed the premises as her separate property.

On the 14th of March, 1856, F. B. Austin and Mary B., his wife, conveyed said premises by their joint deed to Mans-

field Compton, the other defendant, who, on the 10th day of June, 1856, without any consideration, conveyed the premises to said Mary B. Austin. The deed to Compton contained other property, and was given in consideration that Compton should pay Austin's debts. Compton was unable to do this, and, therefore, at F. B. Austin's request, conveyed the demanded premises to his wife. Both of the last named deeds were recorded, the former March 14th, 1856, and the latter June 11th, 1866, and the Court found that both were given to defraud Austin's creditors.

On the trial the plaintiff offered in evidence the judgment roll in *Barker* v. *Austin.* The defendants objected, because the Superior Court was a Court of special, inferior, and limited jurisdiction, and because the Court did not acquire jurisdiction of the person of the defendant Austin. The Court overruled the objection, and the defendants excepted.

Attached to the summons in said judgment roll was the following affidavit, which was the only evidence of its service contained in the judgment roll:

"CITY AND COUNTY OF SAN FRANCISCO—ss.

"James Edwards, being duly sworn, says: That he received the within summons on the 13th day of August, 1856, and on the same day personally served the same by delivering to the said defendant, Franklin B. Austin, personally, in the City of San Francisco, a copy of said summons attached to a certified copy of the complaint, and leaving the same with him.                                    JAMES EDWARDS.

"Subscribed and sworn to before me this 24th August, 1856.                                  J. B. McMINN, Clerk."

The Court below gave judgment for the plaintiff. The defendants F. B. and Mary A. B. Austin appealed.

The other facts are stated in the opinion of the Court.

*Lloyd Baldwin,* and *W. H. Patterson,* for Appellants.

The affidavit of service is fatally defective. It does not

show that the person making the service was a white male citizen of the United States, or over twenty-one years of age. (*McMinn* v. *Whelan*, 27 Cal. 314.)

It nowhere appears that defendant was personally served. The judgment recites that he was duly served. But then the record shows to the contrary; that what the Court regarded as due service was no service at all. No Court can acquire jurisdiction by the mere assertion of it, or by deciding that it has it. (*McMinn* v. *Whelan, supra; Noyes* v. *Butler,* 6 Barb. 613; *Denning* v. *Corwin,* 11 Wend. 648.) But it has been decided in this Court that the recital in a judgment, even by default, that the defendant has been regularly served with summons, is an adjudication upon that fact, and is conclusive in a collateral proceeding, unless the record shows to the contrary. This rule is applied, however, only to Courts of general jurisdiction, and if some of our arguments conflict with the rule above referred to as laid down in *Hahn* v. *Kelly,* we desire to be distinctly understood as not asking the Court to review the principles actually determined in that case, but to decide that the presumptions in favor of jurisdiction have already been carried far enough, and ought not to be extended to inferior Courts. When a judgment creditor purchases at Sheriff's sale, on his own judgment, no notice to him of the equity of third persons is necessary. He is not entitled to protection as a *bona fide* purchaser, because he pays no new consideration. (*Arnold* v. *Patrick,* 6 Paige, 316; see array of authorities in *Hunter* v. *Watson,* 12 Cal. 364.) If, however, Vassault was entitled to notice, he bought with the deed of June 10th, 1856, upon the record, which was full notice.

The remainder of the argument of appellants' counsel was devoted to discussing the question of the constitutionality of the Act creating the Superior Court.

*Harmon & Estee,* for Respondent.

The late Superior Court of the City of San Francisco was a Court of general jurisdiction, so far as concerned the pre-

sumptions in favor of its judgments. Counsel for appellants admit that the rule in *Hahn* v. *Kelly,* 34 Cal. 391, covers judgments like that rendered in *Barker* v. *Austin,* if rendered by a District Court; but contend that the rule does not apply to judgments rendered by the late Superior Court, because of its alleged limited jurisdiction. That is to say, although the jurisdiction of the Superior Court embraced all civil cases where the amount in controversy exceeded two hundred dollars, exclusive of interest; although this was exactly the jurisdiction in money matters of the District Court; although both were equally Courts of record; although the judgments of both were enforced in the same way; yet the records of the one import absolute verity, while the records of the other are mere scrawls upon the sand.

The deed of February 22d, 1855, from Austin to his wife, was never recorded, and is, therefore, void as against plaintiff, who was a subsequent *bona fide* purchaser, for value, without notice. (Act concerning Conveyances, Sec. 26.)

Vassault was a *bona fide* purchaser. He was owner of the judgment on which the lot was sold by the Sheriff, and the real purchaser at the sale. Such a purchaser, whether he be the judgment creditor or a stranger, is a *bona fide* purchaser within our Registry Act. (*Hunter* v. *Watson,* 12 Cal. 377; *Pixley* v. *Huggins,* 15 Cal. 131.)

The fact that Vassault was assignee of the Barker judgment, instead of the original judgment creditor, does not affect the question. (1 Hittell, Art. 3,166, Sec. 22.)


By the Court, RHODES, J.:

In the judgment, through which the plaintiff claims title, it is recited that "the defendant, having been regularly served with process, and having failed to appear and answer the complaint of the plaintiff on file herein, and the legal delay for answering having expired, and the default of the said defendant in the said premises having been duly entered,"

and it is ordered that judgment be entered for the plaintiff. Had the judgment been rendered in a District Court, there would be no question that, within the principles of *Hahn* v. *Kelly*, 34 Cal. 391, the recitals in the judgment would be conclusive upon the point of jurisdiction of the person of the defendant, although the affidavit of service of the summons was not of itself sufficient for that purpose. But it is claimed that the judgments of the late Superior Court of San Francisco have not the benefits of the intendments extended to Superior Courts of general jurisdiction. The statute creating the Superior Court of San Francisco gave it the same jurisdiction in civil cases as that possessed by the District Courts—except that in actions respecting the title or possession of real estate it was limited to the City of San Francisco—and made it a Court of record, with a seal and a Clerk. Its judgments import the same absolute verity as those of the District Courts, unless the Act creating the Court was unconstitutional.

Upon this question the language of the Court in *Seale* v. *Mitchell*, 5 Cal. 403, and in *Hickman* v. *O'Neal*, 10 Cal. 294, may now be cited with peculiar force and significance, as thirteen years have elapsed since the decision in the first case, and ten years since that in the second, and we apprehend that those decisions have as generally been acquiesced in, as settling the question, as those upon any controverted point arising in the Courts. In the first case Mr. Justice HEYDENFELDT says: "The clear result from that case is, that the Superior Court has constitutionally all the powers which are specified in the Act, and such has been the uniform understanding of the profession. That decision (*People ex rel. Hughes* v. *Gillespie*, 1 Cal. 342) has remained as an exposition by the tribunal of the last resort of the character of the Court in question for nearly five years. The community to be affected by it have acted upon it in a vast number of judicial relations; rights of property have grown up under it, have changed hands, and passed through numerous ramifications, until it has become imperative to regard it as

a rule of property, which no power can disturb." In the last case, Mr. Justice BALDWIN, in discussing this question, said: "This Court has put that question at rest on the doctrine of *stare decisis*. We think it might have been placed, if thought necessary, upon broader ground. Upon principle and authority the constitutionality of the Act, we suppose, might be safely rested. (*Beaubien* v. *Brinekerhoff*, 2 Scam. 273; *Nugent* v. *The State*, 18 Ala. 521; *Thomas* v. *The State*, 5 How., Miss., 20; *Houston* v. *Royston*, 7 How., Miss., 548.)" In this opinion Mr. Justice FIELD concurred. Since those decisions, many cases have been passed upon, by this and the District Courts, in which this question has been treated as settled, or the jurisdiction of that Court has been tacitly assumed without question, and innumerable evils, without any corresponding benefits, would follow the reopening of the question.

The only remaining question which we deem it necessary to consider, is that in relation to notice to the plaintiff of the title claimed by Mrs. Austin. In 1855 Austin made a deed of gift of the premises to his wife, but the deed was not recorded, nor did the plaintiff have actual notice of it. In March, 1856, Austin and his wife united in a conveyance of the premises to Compton, and in June of the same year Compton conveyed the premises to Mrs. Austin. The Sheriff sold and conveyed the premises to Ryckman, under a judgment against Austin, in 1861, and Ryckman, who had made the purchase and taken the conveyance as the agent of the plaintiff, conveyed the premises to him in 1862. The defendant's position is, that the deed to Compton, having been executed by Mrs. Austin as well as her husband, the record was constructive notice to the plaintiff of Mrs. Austin's unrecorded deed—that it furnished a clue which, if followed by him with due diligence, would have disclosed her title. Aside from the authorities upon the general doctrine of constructive notice, the case of *Ramsdell* v. *Fuller*, 28 Cal. 37, is principally relied upon by the defendants. In that case the

88

deed was made by Jane E. Fuller, and it did not appear from the deed that she was a married woman. The plaintiff could not show title in the mortgagor without producing that deed, for the mortgagor claimed title through a deed from the husband alone, he having conveyed it as common property; and it was held that her deed afforded those claiming through her husband a clue which, if pursued with proper diligence, would have disclosed the fact that the premises were the separate property of Mrs. Fuller. The title to common property may be taken either in the name of the husband or the wife, or of both jointly; but it is unusual to take it in the name of the wife; that when the title to premises is taken in the name of the wife, that fact is sufficient to excite inquiry on the part of the purchaser from the husband as to whether the legal presumption that the premises are common property is well founded, and if the premises are in truth the separate property of the wife, such purchaser is chargeable—as we held in that case—with notice of the true state of the title. Purchasers may, as a general rule, rely with safety upon the legal presumptions arising from the apparent facts relating to the title, without going in search of possible facts to test or overthrow the presumptions. Thus, where premises are conveyed to the husband for a valuable consideration they are presumptively common property; but they may, in truth, be the separate property of either the husband or the wife, if either of them furnished the purchase money from his or her separate estate. A purchaser from the husband may rely upon the legal presumption that the premises are the common property of the husband and wife, although he knows that, notwithstanding the form of the deed, they may be the separate property of either. From the fact that the husband took the title during the existence of his marriage relation, the purchaser may *suspect* that the premises are the separate property of the wife, but it amounts to no more than a suspicion, and he is not chargeable either with negligence or fraud if he fails to pursue the inquiry. (2 Story on Eq., Sec. 400 *a*.) The property in this

case was presumptively the common property of Austin and wife, and the circumstance that she joined him in the execution of the deed to Compton was scarcely sufficient to raise a suspicion that it was her separate property, or that she held some interest in it. Instances of conveyances by both husband and wife, where the wife has no separate estate in the property conveyed, are neither rare nor unusual. The doctrine of *Ramsdell* v. *Fuller* does not extend to cases of that character. The husband or wife in purchasing property may readily cause the deed to speak the truth, and if any injury is occasioned by a failure in this respect, they, and not a purchaser from them or either of them, ought to suffer the consequences. Had any third person, instead of Mrs. Austin, joined in the execution of the deed, no one would have claimed that that fact would have imparted to one claiming title through Austin, in opposition to the deed to Compton, notice of or a clue leading to an unrecorded deed of Austin to such third person.

Judgment affirmed, and ordered that this judgment be entered as of the fifth day of October, A. D. 1868.


CROCKETT, J., concurring:

I concur in the judgment; but, in my opinion, the fact that Mrs. Austin united with her husband in the deed to Compton, was not only insufficient to put the plaintiff on inquiry as to her unrecorded deed, but it was not sufficient to excite even a suspicion of it. It is so common a practice in this State for wives to unite with their husbands in conveyances of common property, where it is not pretended that they have any separate estate in it, that to hold that fact alone to be sufficient to put the purchaser on inquiry as to her secret equities, would extend the doctrine of constructive notice beyond all reasonable limits.

By the Court, RHODES, J., upon petition for rehearing:

The point urged by the defendants in the petition for rehearing is, that, as the deed of Compton to Mrs. Austin was of record at the time the plaintiff purchased the property under execution, the plaintiff had notice of her title; and the point is again urged on the supposition that it was overlooked by the Court on the previous examination of the record. It was not overlooked, but it was passed because we thought, as we still think, the answer quite obvious. Both Mrs. Austin and the plaintiff claim through Austin. She took nothing, as against the plaintiff, under her deed from Compton, for it was found, upon sufficient evidence, that the deed of Austin and wife to Compton was void as to the plaintiff, and under section twenty-four of the Statute of Frauds, her deed from Compton afforded her no protection, because she was not a purchaser for a valuable consideration. She, then, can rely only upon her unrecorded deed from Austin, and not upon that of Compton, unless the plaintiff purchased with notice. We have heretofore disposed of the deed of Austin and wife to Compton, as related to the question of notice of her unrecorded deed. The deed of Compton is equally valueless as notice. Whatever force there might be in the point, if the plaintiff claimed through her —as the plaintiff in *Ramsdell* v. *Fuller* claimed through the deed to Mrs. Fuller—it was no merit whatever, when he not only claims in opposition to her, but shows that her deed is void. We know of no principle justifying us in holding that the record of a deed, void as to any person, was notice to such person of anything, except, perhaps, of the existence of the void instrument. It certainly furnishes no clue to an earlier deed to the same grantee, executed by another grantor.

The general rule is, that the record of a deed is notice to subsequent purchasers—that is to say, the subsequent purchasers from the same grantor—and it is not intended by anything that has been said to infringe upon this rule.

Rehearing denied