*Decision will be entered under Rule 50.*

ALANSON WEEKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63916. Promulgated November 16, 1934.

*Homer H. Tooley, C. P. A.,* for the petitioner.
*George D. Brabson, Esq.,* for the respondent.

#### OPINION.

MORRIS: The respondent having determined a deficiency in income tax of $9,355.58 for the calendar year 1929, the petitioner brings this proceeding for the redetermination thereof, alleging that the respondent erroneously increased taxable income for 1929 by $43,387 and $7,837.50, representing a profit realized and dividends received, respectively, during said year, which said profit and dividends were

community income and reported for income tax purposes in his wife's return.

The petitioner, an individual, was a practicing physician and surgeon, and throughout the year 1929 was married and living with his wife within the State of California.

During the year 1929 the petitioner was the owner of both separate and community property and in his return for that year reported dividends of $9,169.32 on noncommunity stocks owned by him and dividends of $8,356.25 on community stocks owned as shown by petitioner's return.

On January 26, 1928, the petitioner borrowed funds from the Crocker First National Bank of San Francisco, California, which funds were used in the purchase of 500 shares of Packard Motor Car Co. stock. The note evidencing the indebtedness to the bank was signed only by the petitioner, his wife not joining therein. The shares of stock so acquired were deposited with the bank as security for the loan. On November 14, 1928, the petitioner borrowed sufficient funds from the same bank to purchase an additional 1,000 shares of Packard Motor Car Co. stock. The note evidencing the indebtedness in this case was likewise signed by the petitioner only and the stock was likewise deposited with the bank as security for the money borrowed. On August 17, 1929, the entire block of 1,500 shares was sold, the petitioner realizing a profit of $86,774. The bank loans were paid out of the proceeds from the sale of the stock. There was no security given the bank for the moneys borrowed other than the shares of stock purchased with the moneys. During the year 1929 the petitioner received dividends of $7,837.50 from the shares of stock herein mentioned.

In his income tax return for the year 1929 the petitioner reported one half of the profit realized from the sale of Packard Motor Car Co. stock and one half of the dividends received from said stock, the balance being reported by his wife, upon the theory that both profit and dividends constituted community income. In the audit of petitioner's return the respondent transferred said one half of the profit returned by his wife, increasing the petitioner's income accordingly, and eliminated the same amount from the wife's income.

Our question is whether or not the profit realized from the sale and the dividends received during the ownership of Packard Motor Car Co. stock became community income.

The respondent cites, *inter alia*, *In re Ellis' Estate*, 203 Cal. 414; 264 Pac. 743, wherein it appears that Ellis, among others, purchased certain shares of capital stock under the following circumstances:

That in December, 1923, an arrangement was entered into between four parties, Mr. Fishburn, Mr. Heffley, Mr. Ellis, and Mr. Judkins, whereby they had issued by the Associated Telephone Company 843 shares of its capital stock; that those shares of stock were issued in three certificates and were issued

in the names of three banks, the First National Bank of Long Beach, the First National Bank of Los Angeles, and the Hellman Commercial Trust & Savings Bank of Los Angeles; that, as a part of the same transaction and consummated at the same time, these four men either executed as makers or as guarantors three promissory notes to these banks; that the stock was pledged or held as security for these notes; that none of these men paid anything to the Associated Telephone Company for the stock except the money they received from the banks by signing their notes and putting this stock up as collateral; that that situation remained until the death of Mr. Ellis, and that at no time from the date in December, 1923, until Mr. Ellis died, were any payments made on those notes except that the money which was derived from dividends paid on the stock was credited to the payment of the interest on the notes and in a very slight degree to reduce the principal; that these three notes were signed by Mr. Heffley and guaranteed by a separate instrument by the other three gentlemen named; that there was a verbal agreement between these four men to the end that they would use this stock to make some money out of.

Upon Ellis' death a dispute arose over the proceeds of the sale of his 210 shares of said stock, it being contended by the appellant therein that such proceeds were community property and not separate property as contended by the respondents. The trial court found that the loan " was made upon the faith and credit " of Ellis' " separate property, and his financial standing with said banks, at the time of entering into said agreement for the purchase of said stock." The appellants contended upon appeal that such finding was not supported by evidence sufficient to overcome the presumption that property acquired by a spouse after marriage is community property, citing *Estate of Holbert*, 57 Cal. 257, and *Moulton* v. *Moulton*, 182 Cal. 185; 187 Pac. 421. The court, observed, however, that in those cases there was no evidence showing that the loan was made upon the personal credit of the spouse owning the separate property and finding, as it did, that there was evidence to support the trial court's finding that the loan was made upon the faith and credit of Ellis' separate property, it affirmed the trial court's judgment, saying:

In the present case there is evidence to support the trial court's finding. The appellant was not known in any way in the transaction. All of the property owned by the decedent was his separate property. In addition to the impelling inference from other portions of the record that his guaranty was accepted on the faith and credit of his separate property, there is direct evidence that the guaranty was accepted on the financial standing of the decedent. One of the officers of the First National Bank of Long Beach testified:

I had a guaranty with this note signed by J. E. Fishburn and George B. Ellis. * * * We took the note of Sam R. Heffley; inasmuch as we loaned practically the market value, we took the guaranty of Mr. Ellis and Mr. Fishburn as security. * * * At the time we loaned Mr. Heffley this large sum of money, he was manager and I think vice president of the Associated Telephone and had been for years. He was a man on a salary down at the city of Long Beach, and the people we had guarantee these notes were men of large financial interests, Mr. Fishburn and Mr. Ellis.

It is clear from the record that the credit was extended on the faith of the separate property of the decedent existing at the time the loan was made. The court was therefore correct in finding that the cash item in the estate and over which this controversy arose was the separate property of the decedent.

The petitioner, however, contends that the *Ellis* case is distinguishable, that it does not support the respondent's determination, and, furthermore, that the rule in *Schuyler* v. *Broughton*, 70 Cal. 282; 11 Pac. 719, should be adopted and followed.

In that case, a wife, in California, purchased the property there in question for a total consideration of $900, $200 of which consideration was acquired by gift and $700 she borrowed from her sister for the express purpose of making the purchase, and she gave her promissory note and a mortgage upon the property for the amount borrowed. Her husband signed neither the note nor the mortgage. The court there laid down the rule that:

\* \* \* Where real property has been conveyed to a married woman by a deed which shows on its face a consideration paid by her, the legal presumption is that the property was purchased by community funds, and became community property of the husband and wife; and as such, it is liable for the debts of the husband. *Riley* v. *Pehl*, 23 Cal. 70; *Ramsdell* v. *Fuller*, 28 Cal. 38; *Peck* v. *Vandenberg*, 30 Cal. 11; *Peck* v. *Brummagim*, 31 Cal. 488; *Vassault* v. *Austin*, 36 Cal. 691.

It is true that the legal presumption which arises from the face of the deed may be overcome by extrinsic proof that the consideration paid was the separate funds of the wife, (*McDonald* v. *Badger*, 23 Cal. 393; *Tustin* v. *Faught*, Id. 241; *Landers* v. *Bolton*, 26 Cal. 393;) but, in the absence of such proof, the presumption is absolute and conclusive, (*Pixley* v. *Huggins*, 15 Cal. 129.) Presumptively, therefore, the land in controversy was the common property of the husband and wife, and subject to the judgment and execution against the husband.

After summarizing the evidence offered before the trial court to overcome the presumption in favor of community property, the court said:

There is no doubt that property acquired after marriage, by either husband or wife, by gift, bequest, devise, or descent, with its rents, issues, and profits, is the separate property of the spouse who acquires it, (Deer. Ann. Civil Code, §§162, 163,) and that all other property acquired after marriage by either husband or wife, or both, is community property (sections 164, 687, Id.). The sum of $200, which the plaintiff, as the wife of W. H. Schuyler, acquired by gift, was therefore her separate property, and the land in which she invested that money was, to the extent of the investment, her separate real property. But the sum of $700, which she borrowed, was not acquired by gift, bequest, devise, or descent, nor was it rents, issues, or profits of property so acquired; it was money acquired by contract.

By the Code law a married woman is qualified to enter into contracts as freely as if she were unmarried, (section 158, Civil Code,) and the obligation which springs from any contract she makes is enforceable against her out of her separate property, (section 170 Id.). It follows that a married woman may borrow money to invest in real property, but money borrowed by her for

that purpose, during marriage, will be regarded in law as community property, unless it be borrowed by her upon the faith of existing separate property belonging to her, which she mortgages or pledges as security for its payment, or against which her contract may be enforced. In this case the money borrowed by the wife was not secured by mortgage lien, or otherwise, upon existing separate property of the wife. It appears that she had no separate property other than the $200 before she purchased the land. Under these circumstances, she borrowed the $700 "for the purpose of paying a part of the purchase price of said real property." The money borrowed was therefore common property, and, to the extent of the common fund, the land in which she invested it was also common property, against which her separate contracts could not be enforced.

Though the doctrine of *Schuyler* v. *Broughton, supra,* has been several times questioned, first in *Flournoy* v. *Flournoy,* 86 Cal. 286; 24 Pac. 1012, and later in *Heney* v. *Pesoli,* 109 Cal. 53; 41 Pac. 819, and *Dyment* v. *Nelson,* 166 Cal. 38; 134 Pac. 988; "It can not be stated positively that it has been overruled." Community Property—McKay, 2d Ed., sec. 454. On the contrary it has since been cited as authority in a great number of cases, the most recent being *Hiatt* v. *Seyster,* 10 Pac. (2d) 473, decided April 18, 1932.

The court in *Flournoy* v. *Flournoy, supra,* said:

* * * The case of *Schuyler* v. *Broughton* * * * gives some countenance to the respondent's claim, to the extent that it is there held that money borrowed by a married woman to invest in real estate, during her marriage, is community property, unless it be borrowed by her upon the faith of her existing separate property, *which she mortgages or pledges as security for its payment, or against which her contract may be enforced.* That part of the doctrine announced in the case cited which appears in italics m'ay well be doubted but, in any event, we are not inclined to apply it to a case of this kind, where the question arises between the husband, who made the loan, and the wife, who received it, and where such a construction of the contract between them would defeat the intention of the only persons who were parties to the transaction, and who alone can be affected by a decision of the question. * * *

In *Heney* v. *Pesoli, supra,* the court observed that while *Schuyler* v. *Broughton* was doubted in *Flournoy* v. *Flournoy,* it was "not overruled" and, while questioning the doctrine of that case, the court added, "We think *Schuyler* v. *Broughton* may be differentiated from the present case." The court further observed that "In that case, so far as appears, there was no showing by extrinsic evidence that it was the intention of the spouses that the wife should purchase and take the title and enjoyment as her separate estate, and hence the court held that, as to the purchase money borrowed by the wife, but not secured by any lien or mortgage upon the property, the money so borrowed, and the estate so far as paid for therewith, became the community property of the spouses. In the present case, the extrinsic evidence tended to show the intent to purchase the property by plaintiff as her separate estate, which intent was acquiesced in by her husband." The court concluded there that because of the

intention of the parties so shown the money borrowed and secured by mortgage upon her separate property became also her separate property.

In *Dyment* v. *Nelson, supra,* the court merely reiterated that " The latter part of this doctrine [the doctrine in *Schuyler* v. *Broughton*] has been doubted and criticized by this court in *Flournoy* v. *Flournoy* \* \* \*; but even applying the strict rule of *Schuyler* v. *Broughton* to the case at bar, the findings of the trial court are justified."

In *Moulton* v. *Moulton, supra,* the court stated that the question of the character of money realized from a loan made by a wife had been considered by it in several decisions, and, after citing the various cases hereinbefore discussed, including *Schuyler* v. *Broughton,* it said:

> \* \* \* The principle established in the cases cited is to the effect that a married woman may borrow money to invest in real property, but money borrowed by her during marriage for that purpose will be regarded in law as community property, unless it be borrowed by her upon the faith of existing separate property belonging to her. If, therefore, the loan was made to plaintiff and the credit extended to her upon the faith of her existing separate property, there can be no doubt it constitutes her separate property under the rule announced by this court, and that a resulting trust was created in the property in her favor pro tanto to the extent that the portion of the consideration furnished by her bears to the whole.

We are satisfied, therefore, from the above decisions that the law of California is that money borrowed by either spouse during the existence of the marriage relationship constitutes community property unless the separate estate of the spouse is pledged for the debt, and that the results reached in the *Ellis* and *Schuyler* cases, one holding the property to be separate, and the other holding the property to be community, are founded upon the same rule of law, differing only in their evidentiary aspects. In the one the presumption attaching to property acquired by the spouse with borrowed funds was overcome by the evidence, while in the other it was not.

So that, whether or not the property in question was separate or community, i. e., whether or not the *Ellis* case, cited by the respondent, or the *Schuyler* case, relied upon by the petitioner, should be followed, depends upon whether or not that presumption that the borrowed funds with which the stock was purchased were community funds, has been successfully overcome. We are of the opinion that it has not.

The petitioner here, as did the spouses in those cases, purchased the property in question with funds borrowed upon his personal note and, as in those cases, the property purchased was pledged as security for the loan. But has it been shown whether such funds were borrowed upon the faith and credit of his separate property?

Or is there any evidence—aside from the fact that he procured the funds upon his personal note—that he was not, in fact, acting in behalf of the community?

There is nothing in the stipulated facts from which to conclude that the Crocker First National Bank made the loan upon the petitioner's personal credit standing in the community or that it did so upon the strength of his separate estate. Indeed, it is not shown that the bank even knew that he had a separate estate or that he enjoyed any personal credit standing. Cf. *Moulton* v. *Moulton, supra.* The mere fact that the funds were procured upon the petitioner's personal note and that he actually owned a separate estate does not, in our opinion, overcome the well established presumption that he was acting for and upon the faith and credit of the community. That presumption not having been overcome by the evidence, we must hold that the amounts of profit and dividends arising from the ownership and sale of Packard Motor Car Co. stock purchased with such funds were income to the community.

The respondent, it now appears, has changed his position upon the subject matter of this case since the hearing in California on July 6, 1934. See G. C.M. 13620, Vol. XIII, Internal Revenue Bulletin, No. 41, October 8, 1934, page 8, following the rule in *Schuyler* v. *Broughton, supra,* and reaching the same conclusion under a similar statement of facts.

*Judgment will be entered under Rule 50.*