No. 1,505.

S. C. HASTINGS, RESPONDENT, v. JAMES CUNNINGHAM, et al.,
APPELLANTS.

PRACTICE ACT.—The Practice Act is entirely remedial. It does not affect the rights of the parties as to the subject-matter of the controversy, but prescribes the mode in which redress may be had when these rights have been invaded.

INSOLVENT ACT—PRACTICE UNDER.—The Insolvent Act creates the right or privilege which is sought in the proceedings under it, and the record must show a substantial compliance with its requirements as conditions precedent.

IDEM.—Every intendment may be indulged in favor of the validity of the proceedings not inconsistent with the record; but this rule does not dispense with a substantial compliance with all the conditions of the statute. The record must, therefore, show such a compliance.

IDEM.—If it appear affirmatively from the record that the order to show cause was made one day before the petition was presented to the Judge, it comes within the rule in Hahn v. Kelly, and is coram non judice and void.

IDEM.—No mistake as to dates can be presumed, even if every intendment is to be indulged in favor of the proceeding. This would be a presumption against the record, which cannot lie.

IDEM.—Under the insolvent law of this State, the proceeding in bankruptcy is the voluntary act of the insolvent, and he is not divested of his right of property, nor does the title vest in the assignee, until a valid assignment is made.

IDEM.—The assignment when properly made takes effect, by relation at the time the petition is filed, and the order staying proceedings is made.

JUDGMENT AND EXECUTION.—The statute does not require the docketing of the judgment to precede either the issuing or service of the execution. The docket creates and preserves a lien for two years, but without docketing the judgment, execution may be issued upon it, and real estate levied upon and sold, and the sale and conveyance will pass all the interest held by the judgment debtor at the time of the levy.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The case is stated in the opinion.

*G. F. & W. H. Sharp*, for Appellants.

*First*—The insolvent proceedings of said Haight against the creditors, were commenced on the 27th day of July, 1855. The assignee was appointed by order of the Court, on the 3d day of September, 1865, and the assignment made within ten days thereafter. The defendant, Sharp, deraigned title under said insolvent proceedings. (See Insolvent Act of 1852.)

CAL. REP. XXXIX.—18.

' (T.)

*Second*—The title thus acquired was paramount and prior
to the alleged right claimed by defendant, Moon. (*Taafts*
v. *Manlove*, 14 Cal. 50; *Brewster* v. *Ludekins*, 19 Cal. 162.)

*Third*—The Court below should have disregarded the
objections of defendant, Moon, to the insolvency proceedings
of Haight, because the record was not open to collateral
attack. (*Hahn* v. *Kelly*, Oct. Term, 1867; *Sharp* v. *Daugney* and *Dewey* v. *Porter*, same term.)

*Fourth*—The defendant, Moon, failed to show that he had
succeeded to the title of Haight.

*Fifth*—Defendant, Moon, claimed title under a judgment
against Haight, which was docketed on the 4th day of September, 1855. The Sheriff was, by order of the Court,
appointed the assignee of said Haight, on the 3d day of September, 1855. The judgment, therefore, never became a lien
upon said premises.

*Wilson & Crittenden*, for Respondent.

No valid order requiring the creditors to appear and show
cause was ever made. Such an order was necessary to give
the Court jurisdiction of the proceedings. (*McDonald* v.
*Katz*, 31 Cal. 167)

The order relied on here was made before the schedules
annexed to the petition had been sworn to.

It was made on the 26th of July, 1855, and the schedules
were sworn to, and the petition itself was dated on the following day. The first step required was the presentation of
the petition with the proper schedules and affidavits amended,
and until these papers had been received by the Judge, the
order could not be made. (1 Hitt. Dig. 3814.)

They were the papers on which he was authorized to act,
and without them he had no jurisdiction of the matter for
any purpose.

It is clear, therefore, that as the Judge was not in possession of the necessary papers on which to make the order, he
acted without authority, and the order was void. A mistake
in the dates may be suggested as a solution of the difficulty,
but there is no evidence in the record of any such mistake,

and the case is not one to be helped out by intendments. In *McDonald* v. *Katz*, the Court said : "The proceedings are special, and no intendments can be made in favor of the jurisdiction. Everything bearing upon that question must appear affirmatively." It follows, of course, that the facts are to be taken as they are stated in the record ; and it appearing on the face of the proceedings that the order was made before the schedules were sworn to, there is not only no presumption to the contrary, but the fact cannot be called in question. The record is conclusive.

The order is essential, therefore, to confer jurisdiction of the subject-matter of the proceedings, and until it is made, the proceedings cannot be regarded as having any standing in Court. Even an appearance by the creditors could not affect the question; for jurisdiction, except as to the person, cannot be acquired by consent; and in cases of this character, it is at least doubtful whether jurisdiction can be so acquired as to the person.

The respondent claims under a judgment which was rendered and docketed prior to the assignment in the insolvency proceedings, and the debt for which it was rendered had been contracted by the insolvent in a fiduciary capacity. In the enforcement of this debt, the creditor holding it was under no disability by reason of these proceedings, and unless we are mistaken in supposing that an assignment was necessary to vest the property in the assignee, the judgment became a lien upon it—and this lien could not be taken away by a subsequent assignment. If the legal title remained in the insolvent, the lien attached, and afterwards continued, precisely as if the proceedings had not been commenced. The whole question is, whether the property vested in the assignee prior to the docketing of the judgment? and this question must, we think, be answered in the negative.

*G. F. & W. H. Sharp*, in reply.

The order to creditors was not premature.

It is true, the record shows the order to creditors to have been made July 26th, 1855, which is evidently a mistake, as the petition and schedules were signed, oath taken and filed

July 28th, 1855—and a Court could not well sign an order staying proceedings *two days* before they were presented to him.

Again, the order to show cause to creditors is annexed to the judgment roll, and all the papers are arranged in their proper order, which demonstrates the mistake.

The Fourth District Court is a Court of general jurisdiction, and its exercise of power must be presumed to have been rightfully and legally exercised.

Further, Abell appeared, and cannot dispute it.

Further, if a defect, it is cured by *Hahn* v. *Kelly* (Oct. Term, 1867.)

Respondent claims *a lien* on the property before the assignment, and therefore he has the better rights :

*First*—The order staying proceedings, prevented Abell from entering his judgment. By violation of an order of a Court, he will not be allowed to obtain an advantage.

*Second*—The judgment was not recovered until after the appointment of the assignee.

By the appointment of an assignee, the property of the insolvent vests in him, without an assignment.

It is the same as a trustee, appointed by a Court of equity, in the place of a trustee removed—the property vests in the former without a deed.

*Third*—The filing of the petition in insolvency, *ipso facto* places the property in the hands of the law, and a creditor cannot acquire any lien thereon. (*Taafts* v. *Manlove*, 14 Cal. 50.)

Respondent, Moon, did not succeed to Haight's title, because :

*First*—The execution on the judgment in Abell against Haight, under which the sale took place, was issued before the judgment was docketed. *Execution issued 30th August, 1855. Judgment docketed Sept. 4, 1855.*

The clerk, on issuing execution, acts in a ministerial capacity only ; if their power is exceeded, their acts are void.

The Sheriff has no right to levy upon real property until after the judgment is docketed (Practice Act, Sec. 210); and the clerk is not authorized to issue an execution against real

property until after the judgment is docketed.    (Sec. 204, Practice Act.)

Therefore, the Sheriff having no power to levy upon or sell real estate under said execution, Moon acquired no title.

*Second*—No lien was created by the docketing of the judgment, and did not constitute a lien (if ever) until September 4th, 1855, when the title of Haight had been divested by the appointment of an assignee.

*Third*—As Moon claims under the sale by execution August 30th, 1855, and that sale was not authorized, because the judgment was not docketed, then he acquired no title.

TEMPLE, J., delivered the opinion of the Court:

This is an action for a partition, and the only question involved in this appeal is whether Sharp or Moon has succeeded to the interest formerly held by Samuel W. Haight in the premises sought to be partitioned.    Sharp claims under certain proceedings in insolvency instituted by Haight; while Moon claims under a judgment and execution sale.

The insolvency proceedings were had in the Fourth District Court.    The order to show cause, and also the usual restraining order, was made on the 26th of July, 1855.    The petition and schedules were presented to and received by the Judge on the 27th, as appears by his certificate indorsed upon them, and they were filed on the 28th of the same month.    The return day mentioned in the order to show cause was the 3d of September, at which time, the order having been duly published, the Sheriff was appointed assignee.    The assignment was made September 12th, 1855.    The judgment under which Moon claims was rendered August 8th, was docketed September 4th and the sale was had on the 24th day of December of the same year.    The judgment below was in favor of Sharp, and this is an appeal from an order granting a new trial.

The first question which arises is, whether the Court obtained jurisdiction in the matter of the insolvency of Haight so as to authorize the assignment of his property.    The record discloses that the order to show cause and the order

staying proceedings were made one day before the petition was presented to the Judge, and two days before it was filed. . A valid order to show cause, and a publication under it, is a necessary step in these proceedings, without which no valid assignment can be made. (*McDonald* v. *Katz*, 31 Cal. 167.) The Act confers upon an unfortunate debtor a valuable privilege, to which, without a compliance with the statute, he has no right. It also deprives the creditor of important rights; for, by the terms of his contract, he not only may look to the property of the debtor for payment, but to his accumulations also, for the period of the Statute of Limitations.

In the case of *Hahn* v. *Kelly* (34 Cal. 391), cited by respondent's counsel, Mr. Justice Sanderson criticised the use of the phrase "proceeding according to the course of the common law," as affecting the rule as to what intendments will be indulged in favor of the validity of judicial proceedings. But whether that phrase be meaningless or not, there is a manifest difference between a statute which, like the Practice Act, merely prescribes a mode of procedure and a statute which also creates a right or confers a privilege upon complying with its terms. The Practice Act is entirely remedial. It does not affect the rights of the parties as to the subject-matter of the controversy. It merely provides the mode in which redress may be had when these rights have been invaded. The Insolvent Act creates the right or privilege which is sought in the proceedings under it, and the record must show a substantial compliance with its requirements as conditions precedent.

. Every intendment may be indulged in favor of the validity of the proceedings not inconsistent with the record. This is a rule of evidence, by the light of which we are to interpret the record, but it is not a rule which authorizes us to dispense with a substantial compliance with all the conditions of the statute. Read by the light of this rule, the record must show such a compliance.

Section five of the Act of 1852 provides that the petition and schedules shall be presented to the Judge, and the order to show cause made before or at the time the papers are

filed. They are to be filed by the order of the Judge, and
if the fact that they were not filed until two days after the
order was made were the only defect in the insolvency pro-
ceedings, we should find little difficulty in the case. But it
appears from the record that the petition and schedules were
presented to the Judge, and by him ordered to be filed on
the 27th, while the order to show cause was made on the 26th
of the same month. It therefore appears affirmatively, from
the record, that the order to show cause was made one day
before the petition was presented to the Judge, and there-
fore, within the rule in *Hahn* v. *Kelly*, it was *coram non
judice* and void.

Nor can we presume, as suggested by appellant, that
there is a mistake as to dates, even if every intendment is
to be indulged in favor of the proceeding. This would be a
presumption against the record which cannot lie. "Where
the record is silent as to what was done, it will be presumed
that what ought to have been done was not only done, but
done rightly; but where the record shows what was done it
will not be presumed that something different was done."
(*Hahn* v. *Kelly*, *supra*.) The assignment of Haight to Gor-
ham was therefore void, and no title passed to appellant
under the insolvency proceedings.

But the appellant contends, as we understand him, that
the Court obtained jurisdiction by the filing of a petition in
accordance with the statute, and from that time the property
is in the custody of the law until the appointment of the
assignee, when, by act of law and without any assignment,
it vests in the assignee, and therefore the property in dis-
pute could not be taken under Abell's execution. The
statute must be interpreted by its own terms and provisions,
and decisions made under statutes unlike ours afford little
light for its interpretation. Most of the cases cited by
appellant were under statutes which provide for an assign-
ment by the Court, or by Commissioners appointed for that
purpose, and which also contain provisions for involuntary
bankruptcy. In some statutes it is also provided at what
time the assignment shall take effect by relation.

The statute of this State provides only for a voluntary surrender of his property by a debtor. He may avail himself of the privilege afforded by the Act if he chooses, but his creditors cannot compel him to distribute his assets under its provisions. Every step in the proceedings, at least until after the assignment, requires the voluntary action of the debtor.

He is required to present his petition, which shall conclude with a prayer to make a cession of the property. The Judge receiving the petitions shall make an order requiring all the creditors to show cause why an assignment should not be made. There would be no meaning in this order unless the Court could, upon a proper showing, refuse to permit a surrender of the property under the Act. The Judge may then permit a surrender and appoint an assignee, but it is at least doubtful whether even then he could *compel* an assignment. At all events, the statute requires the debtor to execute the assignment—still making him a voluntary actor in the proceeding.

The better idea is, that when the assignment is made it takes effect by relation at the time the petition is filed and the order staying proceedings made.

In this case no valid restraining order, or assignment, was ever made; the title, therefore, never vested in the assignee, and there was nothing to prevent Abell from levying upon the premises. (*Hill* v. *Keyes*, 10 Allen, 258.)

The statute does not require the docketing of the judgment to precede either the issuing or service of the execution. The docket creates and preserves a lien for two years, but without docketing the judgment execution may be issued upon it, and real estate levied upon and sold, and the sale and conveyance will pass all the interest held by the judgment debtor at the time of the levy. (Pract. Act, Secs. 204, 210, 217.)

Order affirmed.